475 S.E.2d 858

STATE of West Virginia ex rel. Richard
EVANS, Petitioner,

v.

Honorable Dan C. ROBINSON, Special
Judge of the Circuit Court of Wayne
County, Earl C. Bevins and Delphine
Bevins, Respondents,

and

STATE of West Virginia ex rel. Frank
M. PECK, Jr., Petitioner,

v.

Honorable Robert G. CHAFIN, Judge of
the Circuit Court of Wayne County,
Earl C. Bevins and Delphine Bevins, Re-
spondents.

Nos. 23182, 23195.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 6, 1996.

Decided July 8, 1996.

James Allan Colburn, Baer, Colburn & Morris, L.C., Huntington, James M. Sprouse, Sprouse, Pritt & Mohler, Union, for Petitioner Richard Evans.

Frank M. Peck, Jr., Huntington, pro se.

P. Nathan Bowles, Jr., Bowles Rice McDavid Graff & Love, Charleston, for Respondents Earl C. Bevins and Delphine Bevins.

PER CURIAM:

This opinion involves two petitions for writs of prohibition which have been consolidated before this Court because both concern the validity of a May 19, 1993 order of the Circuit Court of Wayne County which enforced a settlement agreement involving an oil and gas lease.[1] The first petition was

1. To be more precise, the May 19, 1993 order was entitled "Final Order Enforcing Settlement" and referenced two documents which were attached to the order: a four page document entitled "Settlement Agreement and Comprehensive Release of All Claims" and a sixteen page oil and gas lease. The "Settlement Agreement and Comprehensive Release of All Claims" document stated that "[t]he parties have ... either actually or by virtue of court order, executed and delivered

brought by Richard Evans and seeks to prohibit the Circuit Court of Wayne County from proceeding with a trial which was set for September 18, 1995, in a civil action entitled *Earl C. Bevins and Delphine Bevins v. Richard Evans and Frank Peck.* The respondents in this action are Earl and Delphine Bevins, and the Honorable Dan C. Robinson. The second petition was filed by Frank M. Peck, Jr., *pro se* and likewise seeks to prohibit the circuit court from proceeding with a trial in the above civil action. The respondents in this action are Earl and Delphine Bevins and the Honorable Robert G. Chafin.[2] For reasons set forth below, we decline to issue the writs of prohibition.

## I

The facts leading up to the petitions now before us are very convoluted. As noted above, at issue is the validity of the order dated May 19, 1993 which enforced a settlement agreement involving an oil and gas lease. Therefore, to better understand how these two petitions for writs of prohibition arose, we must explicitly set forth the facts leading up to the May 19, 1993 order.

The petitioner, Richard Evans (hereinafter "Evans"), has been the fee owner of certain real estate in Wayne County since 1972. Evans also owns virtually all of the stock in Evans Welding and Fabricating, Inc. (hereinafter "Evans Welding"). In 1973, Evans Welding obtained a permit to drill an oil and gas well, which became known as Evans Well No. 1, on the real estate owned by Evans.

In 1977 Evans leased the oil and gas rights to the Evans Well No. 1 to Earl and Delphine Bevins (hereinafter the "Bevins"). The 1977 lease between Evans and the Bevins was for ten years or for so long as gas was being produced in paying quantities. The production of gas ceased in October of 1989 at Evans Well No. 1. Around that time the relationship between the parties deteriorated.

More specifically, Evans, who lived on the real estate, accused the Bevins of not complying with certain terms of the lease and damaging the well. The Bevins accused Evans of repeated interference with their right to produce gas from the well. As a result of this disagreement, the Bevins have initiated four actions against Evans over the past seven years.

### 1989—First Action—*Bevins v. Evans*

The Bevins filed the first action in 1989 seeking damages which resulted from Evans' interference with the operation of the well. Evans filed a counter-claim alleging that the Bevins had violated the lease agreement. After a hearing was held before the circuit court, both the complaint and the counter-claim were dismissed for failure of proof. More specifically, the circuit court found that the Bevins failed to prove that the well could not be revived. The circuit court also found that Evans' claim for a share of the proceeds beyond that written in the 1977 lease was barred by the parol evidence rule and the statute of limitations. This Court denied Evans' petition for appeal of that ruling.

### 1991—Second and Third Actions— *Bevins v. Evans*

The Bevins filed a second action in 1991 seeking a mandatory injunction to stop Evans from blocking their access to the well. The Bevins also filed a third action in 1991 seeking a declaration that the 1977 lease was valid and seeking compensatory and punitive damages.

The circuit court consolidated for trial the second and third actions filed by the Bevins. Before the trial of the 1991 actions could take place, however, the circuit court found the existence of a settlement agreement which included a new oil and gas lease. The settlement agreement and oil and gas lease were incorporated by reference in the May 19, 1993 order entitled "Final Order Enforcing Settlement." Neither party appealed the May 19, 1993 order.

---

to Earl Bevins and Delphine Bevins an oil and gas lease[.]" Therefore, the oil and gas lease was a part of the settlement agreement between the parties.

**2.** The difference between the trial judges in the two petitions occurred because Judge Chafin, who was initially on the case leading up to the settlement involving the oil and gas lease at issue, disqualified himself and thus, was replaced by Judge Robinson.

On October 3, 1993, the Bevins contracted with Mountaineer Gas Company to sell the gas from the well. However, because of ongoing problems between Evans and the Bevins, Mountaineer Gas Company has not taken any gas from the well according to the Bevins.

### 1994—Fourth Action—*Bevins v. Evans*

As a result, in 1994 the Bevins filed yet another action against Evans, the fourth action, seeking damages for *inter alia*, slander of title and tortious interference with the lease incorporated by reference in the May 19, 1993 order enforcing settlement. In response, Evans made a motion to dismiss the complaint and a motion for summary judgment in the court below. Evans argued that the May 19, 1993 order of the circuit court was void because it enforced a settlement agreement between the parties when the parties had not agreed to the terms of settlement. Thus, Evans concluded that because the Bevins' fourth action is based upon the May 19, 1993 settlement agreement, it must be dismissed.[3]

The circuit court denied both of Evans' motions in orders entered on June 12, 1995 and July 6, 1995, stating that the May 19, 1993 order was a valid, enforceable, final appealable order that neither side appealed. Therefore, Evans filed the petition for a writ of prohibition which is now before this Court seeking to prohibit the circuit court from proceeding with the trial of the Bevins' fourth action.

As noted above, Frank M. Peck, Jr., *pro se* filed a petition for a writ of prohibition which is now before us. According to the Bevins, Peck is an employee of Evans' company and is a defendant in the pending civil action brought by the Bevins. The cause of action against Peck is based upon, in part, the insulting words statute, *W. Va.Code*, 55–7–2 [1923], and according to the Bevins, does not

concern the May 19, 1993 order. Peck was not a party to the litigation which resulted in the May 19, 1993 order. Nevertheless, Peck appears to argue that the Bevins should be prohibited from asserting the cause of action against him because the May 19, 1993 order is void.

## II

The issue before this Court in this prohibition proceeding is whether the May 19, 1993 order is void. More specifically, Evans asserts that there was no true meeting of the minds when the May 19, 1993 order enforcing a settlement was entered. Evans maintains that the circuit court dictated the terms of settlement by "crafting" an oil and gas lease that was not agreed upon by either party. Therefore, Evans concludes that the May 19, 1993 order is void and, therefore, cannot be enforced.

 It is clear "that the policy of the law is to encourage settlements." *Valloric v. Dravo Corp.*, 178 W.Va. 14, 18 n. 6, 357 S.E.2d 207, 212 n. 6 (1987). *E.g.*, syl. pt. 1, *Moreland v. Suttmiller*, 183 W.Va. 621, 397 S.E.2d 910 (1990); syl. pt. 2, *State ex rel. Vapor Corp. v. Narick*, 173 W.Va. 770, 320 S.E.2d 345 (1984); syl. pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968). It is also clear that a court may only enforce a settlement when there has been a definite meeting of the minds. *E.g.*, *O'Connor v. GCC Beverages, Inc.*, 182 W.Va. 689, 391 S.E.2d 379 (1990). Thus, we agree with Evans' contention that a court may not enforce a settlement when there has been no meeting of the minds.

 However, when we examine whether an order is void we must be mindful that "[t]he general rule is that there is a presumption of regularity of court proceedings; it remains until the contrary appears and the burden is on the person who alleges such irregularity to affirmatively show it." Syl.

---

3. During the same time period, Evans initiated an action against the Bevins in magistrate court. The magistrate court found the Bevins guilty of the crime of trespass on the real estate at issue. This conviction was appealed to the circuit court; however, at the time the petitions now before us were filed, the circuit court had not yet heard the appeal.

Additionally, Evans maintains that an arbitration proceeding is now pending. However, Evans asserts that because the arbitration proceeding was being held pursuant to the terms of the lease which was allegedly "crafted" by the circuit court and incorporated by reference in its May 19, 1993 order which enforced a settlement, the arbitration proceeding would be moot if the 1993 order is found to be void.

pt. 1, *State ex rel. Massey v. Boles,* 149 W.Va. 292, 140 S.E.2d 608 (1965). *See also Kimball v. Walden,* 171 W.Va. 579, 582, 301 S.E.2d 210, 214 (1983). *Cf.* syl. pt. 2, *Fortner v. Fortner,* 168 W.Va. 70, 282 S.E.2d 48 (1981) (" 'If the court, which rendered the judgment, was a court of general jurisdiction, the presumption is it had jurisdiction of the particular case, and to render the judgment void, this presumption must be overcome by proof.' " (citation omitted)). This general principle is particularly true when a party, who has failed to appeal a final order, brings an extraordinary writ to challenge that final order, given that on appeal

> ' "[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syllabus point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966).' Syl. pt. 1, *M.W. Kellogg Co. v. Concrete Accessories Corp.,* 157 W.Va. 763, 204 S.E.2d 61 (1974).

Syl. pt. 2, *Waco Equipment v. B.C. Hale Const.,* 182 W.Va. 381, 387 S.E.2d 848 (1989).[4] Therefore, this Court must examine the record in order to see if Evans has affirmatively shown that the circuit court entered an order to enforce a settlement which the parties did not agree upon. At the outset, we repeat that the facts leading up to the May 19, 1993 order are convoluted.

Evans' counsel sent a letter dated September 29, 1992, to the Bevins' counsel stating that the parties had agreed to settle and listed some of the terms which would be put into a new lease. Subsequently, the Bevins' counsel in a letter dated December 7, 1992, informed the circuit court that the "proposed settlement of the . . . case ha[d] apparently broken down." The Bevins' counsel requested that the circuit court set the case for trial.

In response, Evans' counsel sent a letter dated December 9, 1992, to the circuit court informing it that there was a settlement agreement which should be enforced. Evans' counsel further explained in the letter that the parties were simply having trouble agreeing on the precise terms of the new lease.

Thereafter, Evans' counsel filed a motion to enforce the settlement agreement. In that motion, Evans' counsel stated that "[t]he fact that it was necessary to draft a lease and that there could be further discussion between counsel as to the precise terms of the lease is not an indication that the case was not settled." Conversely, the Bevins' counsel maintained that the parties had not reached a settlement agreement. The Bevins' counsel further stated that the Bevins would not now agree to a lease even if it accurately reflected the agreement because of the amount of time that had gone by.

The circuit court in an order entered on or about February 3, 1993, held that an enforceable settlement agreement existed. The circuit court ordered the parties to submit drafts of the new lease stating that the drafts should be based on the West Virginia Standard Lease Form.[5] The circuit court further stated that if the parties failed to agree on the terms of the new lease, then it would "determine the final terms of the lease and enter an order directing that the parties shall be bound by the terms approved by the Court[.]"

In response to the circuit court's February 3, 1993 order, Evans' counsel sent a letter dated February 18, 1993, to the circuit court explaining the different proposed leases. Exhibit A was a proposed lease submitted by Evans' counsel. Exhibit B was the proposed lease in Exhibit A with additions and deletions recommended by the Bevins' counsel. Exhibit C was Evans' counsel's changes to Exhibit B.

Evans sent a letter dated February 24, 1993, to his counsel stating that he would

---

**4.** Additionally, we point out that

> [o]ne of the purposes of West Virginia Rule of Civil Procedure 60(b) is to provide a mechanism for instituting a collateral attack on a final judgment in a civil action when certain enumerated extraordinary circumstances are present. When such extraordinary circum-

stances are absent, a collateral attack is an inappropriate means for attempting to defeat a final judgment in a civil action.

Syl. pt. 2, *Hustead v. Ashland Oil, Inc.,* 197 W.Va. 55, 475 S.E.2d 55 (1996).

**5.** Evans asserts that there is no West Virginia Standard Lease Form.

only agree with the proposed lease found in Exhibit A. Evans further informed his attorney in a letter dated February 26, 1993, that he wanted the proposed lease found in Exhibit C, which was drafted by his attorney, withdrawn. Evans' attorney informed the circuit court that when he had submitted Exhibit C, he thought he had authority to do so from his client; however, Evans' attorney made clear to the circuit court that he understood his client to have withdrawn his authority to submit Exhibit C. In fact, in his motion for leave to withdraw as counsel, Evans' counsel wrote that although Evans has stated that Exhibit C "was submitted to the Court without his having had an opportunity to review that document and approve it[,] [t]he undersigned counsel has a different recollection."

At a March 24, 1993 hearing before the circuit court, Evans' attorney made a motion to withdraw as Evans' counsel. Evans informed the circuit court that he did not wish for his counsel to withdraw. Thus, the circuit court denied Evans' attorney's motion.[6] The circuit court further stated that it would "proceed today to determine what the agreed lease will contain and ... [would] do so by comparing Exhibit A and basically Exhibit C in this lease."[7]

The circuit court then proceeded to discuss paragraph by paragraph the terms of the lease with the parties. Although the dialogue in some places in the hearing transcript is not clear, most of the discussion at that hearing indicates that Evans agreed to any changes made to Exhibit A. At one point, when Evans' counsel stated that the change being suggested was acceptable, Evans informed the circuit court that "I'm going to take my counsel's advice[.]" The Bevins at another point in the hearing gave up one of the terms they wanted in the lease in order to appease Evans. Furthermore, when the issue of whether an arbitration clause should

be inserted into the lease was raised, the circuit court stated that it would not require arbitration to be a part of the lease unless both parties agreed to that term. Both parties agreed to add an arbitration clause. At the conclusion of the hearing, the circuit court ordered one of the parties to draft the lease which was discussed during the course of the hearing.

Thereafter, the settlement agreement and the lease were incorporated by reference in the May 19, 1993 order enforcing a settlement. The circuit court stated in its May 19, 1993 order that the settlement agreement and new lease were binding regardless of whether the parties executed them.

On June 22, 1993, the Bevins obtained an order adjudicating Evans in contempt of the May 19, 1993 order because Evans had changed the lock on a gate across the road leading to the well and refused to give the Bevins a key to the lock, thus, blocking the Bevins access to the well. The circuit court ordered Evans to give a key to the Bevins and to pay $200.00 in attorney fees. According to the Bevins, Evans complied with the court order. However, Evans sent a pleading to the circuit court clerk stating that he did not "waive[ ] the right to appeal[.]" As we have previously stated, no one appealed the May 19, 1993 order.[8]

Based on the facts above, we find that Evans has failed to show affirmatively that the circuit court enforced a settlement agreement when there had not been a meeting of the minds. Although Evans' primary argument is that the circuit court "crafted" the lease and then ordered its implementation, the record before us indicates that Evans is the party who stated that there was an enforceable settlement agreement. Further-

---

6. The two attorneys retained by Evans in the prohibition proceeding now before us are different than the attorney who represented Evans at the March 24, 1993 hearing. We commend counsel representing Evans before this Court, James M. Sprouse, and counsel representing the Bevins before this Court, P. Nathan Bowles, Jr., for their professional approach in representing their clients in this acrimonious saga.

7. Prior to this hearing Evans had consulted with an attorney who did not represent him at the hearing. Although the record is not clear, it

appears that this attorney recommended to Evans that certain changes be made to Exhibit C. In any event, the circuit court allowed Evans and the attorney who represented him at the hearing to discuss the recommended changes.

8. Evans asserts that the Bevins' attorney told him that the May 19, 1993 order was void and that the Bevins would not recognize the settlement agreement or lease incorporated by reference in that order. Evans maintains these representations by the Bevins' counsel induced him to not appeal the May 19, 1993 order. Thus, Evans

more, Evans is the party who stated that "[t]he fact that it was necessary to draft a lease and that there could be further discussion between counsel as to the precise terms of the lease is not an indication that the case was not settled." Therefore, even though the circuit court stated it would determine the terms of the lease, Evans' conduct indicates that he believed there was an enforceable settlement which included a new oil and gas lease.

Importantly, the transcript of the March 24, 1993 hearing indicates that the circuit court did not dictate the terms of the lease. Instead, the circuit court went through the proposed leases paragraph by paragraph in order to ascertain if both parties agreed to the terms. In fact, as we have noted, the circuit court stated that it would not require arbitration to be a part of the lease unless *both parties agreed to that term.* Therefore, our review of the record indicates that Evans bargained for and agreed to the lease which was incorporated by reference in the May 19, 1993 order enforcing a settlement.[9]

Furthermore, Evans did not appeal the May 19, 1993 order even though he indicated he was aware he had the right to do so. If Evans disagreed with the terms of the settlement, he should have appealed the May 19, 1993 order. The fact that he did not appeal is another indication that the circuit court acted within its authority when enforcing the settlement. Based on all of the above, we find that Evans has not met his burden of proving that the circuit court acted irregularly.[10]

## III

We have held that " '[p]rohibition lies only to restrain inferior courts from proceeding in causes over which they have no jurisdiction, or, in which, having jurisdiction, they are exceeding their legitimate powers and may not be used as a substitute for writ of error, appeal or certiorari.' Syl. pt. 1, *Crawford v. Taylor,* 138 W.Va. 207, 75 S.E.2d 370 (1953)." Syl. pt. 2, *Cowie v. Roberts,* 173 W.Va. 64, 312 S.E.2d 35 (1984). *See also W. Va.Code,* 53–1–1 [1923] ("The writ of prohibition shall lie as a matter of right in all cases

concludes that the Bevins should be estopped from now stating that the May 19, 1993 order is valid. In that we have no evidence other than Evans' assertion that the Bevins' attorney made these statements, we find this argument to be without merit.

9. In a letter dated March 25, 1994, and written by James Allan Colburn, one of Evans' current counsels, to Deana Cooper of Mountaineer Gas, Evans indicates that he has agreed to abide by the terms of the lease:

> This lease was made effective by Order of the Circuit Court of Wayne County, West Virginia. It was signed by Earl Bevins and Delphine Bevins but it was not signed by the Evans'. The lease is still in full force and effect as a result of the Court Order dated May 19, 1993 and governs the rights and duties between the Bevins' and the Evans'.
> Whatever right given by the lease exists from [the] reading of the document. The lease appears to give Earl Bevins the right to produce and sell gas from Richard Evans Well # 1, Lot # 23.
> It is the Evans' desire not to interfere in any way with the sale of gas from Richard Evans Well # 1, Lot # 23, produced in accordance with the Court Order which made the lease effective as of May 19, 1993. Any inference to the contrary by letter from Richard Evans dated February 22, 1994, is hereby specifically disavowed and repudiated.

10. Evans also argues that the circuit court lacked subject matter jurisdiction to enter the May 19, 1993 order enforcing a settlement which created a new lease. Evans maintains that the two actions which gave rise to the May 19, 1993 order were for damages and were not to create a new lease. Thus, Evans concludes that the circuit court did not have subject matter jurisdiction to enforce a settlement which created a new lease. We disagree. In that the two cases involved the rights of the parties to Evans Well No. 1, we find that a settlement creating a new lease to resolve the issue of the rights of each party is well within the circuit court's jurisdiction.

Additionally, Evans argues that the circuit court did not have personal jurisdiction over Evans Welding; therefore, the May 19, 1993 order is void because such order directed Evans Welding, a company in which Evans owns virtually all of the stock, to transfer documents regarding the Evans Well No. 1 to the Bevins. Conversely, the Bevins assert that the May 19, 1993 order does not direct Evans Welding to do anything. Instead, the order directs Evans to have Evans Welding execute certain forms relating to regulatory requirements set by the Division of Environmental Protection. Therefore, the Bevins conclude that it was not necessary for the circuit court to have personal jurisdiction over Evans Welding. Our review of the order indicates that the Bevins are correct. Therefore, we find Evans' argument to be without merit.

of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."). Accordingly, in that Evans has failed to show that the circuit court exceeded its legitimate powers, we decline to issue a writ of prohibition.[11] Additionally, because Peck's petition for writ of prohibition was based upon the validity of the May 19, 1993 order, we likewise decline to issue him a writ of prohibition.

Writs denied.

## UPON A PETITION FOR REHEARING EN BANC BEFORE THE FULL COURT

On October 7, 1996, came the appellee, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on September 24, 1996, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on September 24, 1996, is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. It is further ordered that the appellee shall file with the clerk of this Court ten additional copies of the appendix previously filed in this case.

11. We do not look favorably upon the use of extraordinary writs to address problems which should have been appealed. *See* syllabus point 1, *State ex rel. Williams v. Narick*, 164 W.Va. 632, 264 S.E.2d 851 (1980). *Cf. Hustead v. Ashland Oil, Inc.*, 197 W.Va. 55, 475 S.E.2d 55 (1996) (A party could not bring a declaratory judgment action to challenge an order which memorialized a settlement because the more appropriate action when a party objects to the terms of the settlement that is approved by the circuit court is to appeal the order). As we have explained, "[t]raditionally, the writ of prohibition speaks purely to jurisdictional matters. It was not designed to correct errors which are correctable upon ap-

peal." *Williams*, 164 W.Va. at 635, 264 S.E.2d at 854 (citations omitted). More specifically,

'[w]here prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.' Syl. pt. 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973). Syl. pt. 1, *Williams, supra*. Based upon the facts in this case, Evans' remedy was a timely appeal.