600 S.E.2d 285

**TRIAD ENERGY CORPORATION OF WEST VIRGINIA, INC., a West Virginia Corporation, Plaintiff Below, Appellee,**

v.

**Barbara Trunk RENNER, Billie Worden, and all heirs, assigns, or creditors of James Worden, and Mary Thorn Anderson, Defendants Below,**

**Barbara Trunk RENNER, Defendant Below, Appellant.**

**No. 31243.**

Supreme Court of Appeals of West Virginia.

Submitted: Feb. 10, 2004.

Filed: May 27, 2004.

Timothy E. Haught, Esq., New Martinsville, for Appellant Renner.

Amy M. Smith, Esq., Michael L. Bray, Esq., Steptoe & Johnson, Clarksburg, for Appellee Triad Energy Corporation of West Virginia, Inc.

D. Keith White, Esq., Bryant & White, St. Marys, for Mary Thorn Anderson.

PER CURIAM.

This action is before this Court upon the appeal of the appellant, Barbara Trunk Renner, from the July 31, 2002, order of the Circuit Court of Tyler County, West Virginia, granting the motion of the appellee, Triad Energy Corporation of West Virginia, Inc., to enforce a written settlement agreement. The agreement was prepared by Triad in a dispute concerning Triad's claim of right to cross Renner's land to access its oil and gas wells on adjoining property.

Appellant Renner contends that there was no meeting of the minds for such an agreement, especially since it included provisions beyond the settlement terms previously outlined by Triad's counsel on the record before the Circuit Court. Therefore, according to appellant Renner, the written agreement is unenforceable. Triad, on the other hand, contends that the Circuit Court properly enforced the written settlement agreement because the terms previously outlined on the record were reflected in the agreement by way of standard form oil and gas provisions which a reasonable person would understand would be included in a settlement document of that nature.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court concludes that the Circuit Court committed error in enforcing the written settlement agreement. Specifically, this Court is of the opinion that, the use by Triad of a standard form or standard oil and gas industry language notwithstanding, the provisions of the written settlement agreement constituted material, unilateral variations of the terms previously set forth before the Circuit Court. Thus, there was no meeting of the minds between the parties concerning the written agreement. Accordingly, the July 31, 2002, order of the Circuit Court of Tyler County is reversed, and this action is remanded to that Court for proceedings consistent with this opinion.

I.

FACTS AND PROCEDURAL
BACKGROUND

Appellant Renner is a partial owner of a farm in Tyler County containing approximately 120 acres. In 1998, she erected a gate across an unimproved road which ran through the property. The purpose of the gate was to prevent hunting activities on the farm.

According to Renner, in September 2000, employees of Triad Energy Corporation of West Virginia, Inc., without prior notice, cut the lock on the gate and entered the farm in order to access 5 oil and gas wells located upon an adjoining tract known as the Bonner property. As alleged by Renner, the employees bulldozed the road and damaged various meadows, trees and an electric fence. The parties disputed whether Triad had previously obtained a right-of-way through the Renner farm to reach the oil and gas wells.

On December 4, 2000, Triad filed an action in the Circuit Court of Tyler County against appellant Renner and others owning an interest in the farm. Triad alleged that it was

a lessee of the oil and gas wells on the adjoining Bonner property and that it had acquired a right-of-way across the Renner farm to access the wells. Triad sought injunctive relief to prevent Renner from interfering with its right to cross the farm. Appellant Renner filed an answer alleging that Triad was a trespasser and that she was entitled to injunctive relief against Triad and damages. She also alleged that Triad had alternative ways to access the Bonner property.

A hearing was conducted by the Circuit Court on December 20, 2000, concerning the respective requests for injunctive relief. At that time, the Circuit Court was informed that the parties had reached an agreement in settlement of the action. The terms of the agreement were then set forth on the record by Triad's counsel and were as follows:

> I think we've worked out an agreement where the defendants will grant a right-of-way to my client [Triad] for access to the Bonner property, as well as a gas gathering line.
>
> It will be a limited purpose oil and gas production right-of-way. Triad will establish the center line of the right-of-way by survey. It will be 40 feet in width.
>
> From these wells, [Triad] will supply up to 200 MCF of gas per calendar year to one residential dwelling located on the property. The owners of the property [will] maintain the service line from the meter to the dwelling, and it's understood that Triad is not a utility, that service may be interrupted by *force majeure*.
>
> Triad is to maintain the right-of-way in its natural state as possible with a minimum use of rock and gravel on it. The right-of-way may be gated with dual locks, and no weapons or hunting will be permitted by Triad employees.
>
> I believe that completely states our agreement. We do not have an order for the Court today, obviously, and it will take us sometime to complete the survey and have a written right-of-way agreement signed by the parties.
>
> If I understand, this is the agreement. Then Triad will have access within the next few days, as soon as the renters can get out there and remove the locks that they have on the gate.

During the hearing, all other counsel for the parties indicated to the Circuit Court that the above statement accurately reflected their understanding of the settlement terms.

Thereafter, a written settlement agreement prepared by Triad was submitted to appellant Renner for signature. The written agreement, consisting of 6 pages of terms and conditions, was described by Triad as a "standard form oil and gas right-of-way agreement with changes made to reflect the specific non-standard provisions on which agreement had been reached by the parties." Renner, however, did not sign the agreement. On August 30, 2001, Triad filed a motion to enforce the written settlement agreement. In reply, Renner asserted, *inter alia,* that the written settlement agreement contained "additional terms not set forth on the record [.]" In particular, Renner indicated that the written settlement agreement would allow Triad to place multiple pipelines upon her farm, in contrast to the single gas gathering line and the residential service line previously described before the Circuit Court. Accordingly, appellant Renner asked the Circuit Court to deny Triad's motion because the parties failed to reach a "meeting of the minds" concerning the written agreement.

Following a hearing, the Circuit Court entered the order of July 31, 2002, granting Triad's motion to enforce the written settlement agreement. In so ruling, the Circuit Court indicated that the terms previously outlined on the record, and the intent of the parties to settle the action, were reflected in the standard form oil and gas provisions of the written agreement prepared by Triad.

## II.

### STANDARDS OF REVIEW

As long recognized by this Court, the law favors and encourages the resolution of controversies by contracts of compromise and settlement, rather than by litigation. *Woodrum v. Johnson,* 210 W.Va. 762, 771, 559 S.E.2d 908, 917 (2001); syl. pt. 1, *Sanders v. Roselawn Memorial Gardens,* 152 W.Va. 91, 159 S.E.2d 784 (1968); *Wright v.*

*Davis,* 132 W.Va. 722, 727, 53 S.E.2d 335, 337 (1949); *Janney v. Virginian Railway Company,* 119 W.Va. 249, 252, 193 S.E. 187, 188 (1937). That principle, however, is not absolute. As syllabus point 5 of *State ex rel. Showen v. O'Brien,* 89 W.Va. 634, 109 S.E. 830 (1921), holds: "The rule that the courts favor compromise settlements by parties to prevent vexatious and expensive litigation only applies where the legal and equitable rights and interests of all parties concerned in a judgment are regarded and respected in good faith."

■ Settlement agreements are to be construed "as any other contract," *Floyd v. Watson,* 163 W.Va. 65, 68, 254 S.E.2d 687, 690 (1979), and, as noted in syllabus point 1 of *Martin v. Ewing,* 112 W.Va. 332, 164 S.E. 859 (1932): "A meeting of the minds of the parties is a *sine qua non* of all contracts." Syl. pt. 2, *Sanson v. Brandywine Homes,* 215 W.Va. 307, 599 S.E.2d 730 (W.Va.2004); syl. pt. 1, *Burdette v. Burdette Realty Improvement,* 214 W.Va. 448, 590 S.E.2d 641 (2003); syl. pt. 4, *Riner v. Newbraugh,* 211 W.Va. 137, 563 S.E.2d 802 (2002); syl. pt. 1, *Wheeling Downs Racing Association v. West Virginia Sportservice,* 157 W.Va. 93, 199 S.E.2d 308 (1973).

■ The meeting of the minds requirement has been recognized by this Court as specifically applicable to settlement agreements. *See, Riner, supra,* 211 W.Va. at 144, 563 S.E.2d at 809; *State ex rel. Evans v. Robinson,* 197 W.Va. 482, 475 S.E.2d 858 (1996), *cert. denied,* 519 U.S. 1121, 117 S.Ct. 971, 136 L.Ed.2d 855 (1997), "a court may only enforce a settlement when there has been a definite meeting of the minds." 197 W.Va. at 485, 475 S.E.2d at 861. In *O'Connor v. GCC Beverages,* 182 W.Va. 689, 691, 391 S.E.2d 379, 381 (1990), this Court stated: "It is well understood that '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties.' 15A C.J.S. *Compromise & Settlement,* sec. 7(1)(1967)"

■ Finally, this Court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement. Syl. pt. 1, *Riner v. Newbraugh,*

*supra; DeVane v. Kennedy,* 205 W.Va. 519, 527, 519 S.E.2d 622, 630 (1999).

### III.

### DISCUSSION

As indicated above, appellant Renner contends that the Circuit Court committed error in granting the motion to enforce the written settlement agreement because the agreement contained material additions and provisions not set forth on the record during the December 20, 2000, hearing. Triad, on the other hand, contends that the ruling of the Circuit Court should be upheld because the terms previously set forth on the record were reflected in the written settlement agreement by way of standard form provisions which are ordinarily acceptable where oil and gas easements are conveyed.

In *Riner v. Newbraugh, supra,* Mr. and Mrs. Riner agreed to settle their action against certain land developers and builders concerning the subdividing of the Riner farm. The settlement was reached as a result of court-ordered mediation. The Riners, however, refused to sign the final Settlement Agreement and Release prepared by the developers and builders because the Agreement included provisions which had never been addressed during the mediation conference. The additional provisions were set forth in the Agreement in three numbered paragraphs and concerned the distribution of monies and the assignment and termination of various claims. Nevertheless, the Circuit Court granted the motion of the developers and builders to enforce the Settlement Agreement and Release. In support of the ruling, the developers and builders asserted that the additional provisions were "impliedly included" in the mediated settlement because the principal intent of the parties was to fully resolve the underlying litigation.

Upon appeal in *Riner,* this Court reversed and held that the Circuit Court committed error "by requiring the Riners to sign an agreement that differed in substance from the agreement reached as the result of the mediation conference." 211 W.Va. at 139, 563 S.E.2d at 804. Specifically, this Court stated:

[T]here was not a meeting of the minds with regard to the terms that are specified

in paragraph numbers 5, 6 and 7 of the "Settlement Agreement and Release." Absent this critical and necessary contractual element, we cannot require the Riners to sign a document that contains terms that were not part of the original agreement. * * *

For the Appellees to suggest that paragraphs 5, 6 and 7 represent nothing more than standardized release language is specious, as those paragraphs clearly address additional substantive terms and not mere procedural fine points.

211 W.Va. at 144, 563 S.E.2d at 809.

The recent opinion of this Court in *Burdette v. Burdette Realty Improvement*, *supra*, is consistent with the emphasis of *Riner* upon the "meeting of the minds" requirement for settlement agreements. In reversing an order compelling the enforcement of a settlement agreement in a dispute concerning the parties' family-owned business, this Court, in *Burdette*, noted that "an inability of the parties in this action to reach a true meeting of the minds has pervaded the entire settlement process from beginning to end." 214 W.Va. at 454, 590 S.E.2d at 647.

■ In the matter now to be determined, counsel for Triad characterized the settlement terms set forth on the record during the December 20, 2000, hearing as completely stating the agreement between the parties. In addition to granting Triad a right-of-way across appellant Renner's farm to access the Bonner property, those terms contemplated a single gas gathering line and a residential gas service line. By contrast, the written settlement agreement grants Triad the right to install various pipelines across the Renner farm. As paragraph 2 of the written settlement agreement states:

Grantee [Triad] shall have the right to lay pipelines ... across and through the Servient Properties for the purposes of (i) transporting oil, gas and/or other hydrocarbons from the Destination Properties across the Servient Properties, and (ii) transporting to and from the Destination Properties, water, brine and/or liquids or gases necessary or convenient for the drilling for and/or production of oil, gas and other hydrocarbons on, upon and from the Destination Properties.

In that regard, the written settlement agreement, itself, is unclear. In addition to the residential service line, paragraph 2, as shown above, contemplates more than one pipeline for various purposes. Yet, the legal descriptions and plat attached to the written agreement as a supplement to paragraph 2 can reasonably be interpreted as depicting a proposed right-of-way for a single "gas pipeline" only.

Moreover, beyond the terms set forth on the record during the hearing, the written settlement agreement releases Triad from liability for damage or injury to the Renner farm and also provides Triad with the right, in certain circumstances, to assign its interests under the written agreement to third parties. The release of liability and the right to assign interests were not addressed during the hearing of December 20, 2000.

Manifestly, the additional provisions of the written settlement agreement discussed above, all of which were favorable to Triad, were material, unilateral variations of the terms previously set forth before the Circuit Court. Consequently, the suggestion that the additions were merely part of a standard form which should have been acceptable to the parties is unconvincing. The use of a standard form to finalize the settlement terms between the parties was never mentioned before the Circuit Court. As appellant Renner asserts:

While standard provisions may be reasonably expected to be inserted into a written contract, such provisions including assignment, release of liability, and fact-specific terms are material and should not have been added. These additional material provisions were not ancillary, and this case presents a clear dispute as to the "material terms of the agreement."

There was no meeting of the minds concerning the written settlement agreement. Therefore, the granting of Triad's motion to enforce that agreement constituted an abuse of discretion.

## IV.

## CONCLUSION

Although settlement agreements placed upon the record in open court are generally

enforceable, *United States ex rel. McDermitt, Inc. v. Centex–Simpson Construction,* 34 F.Supp.2d 397, 399–400 (N.D.W.Va.1999), *affirmed,* 203 F.3d 824 (4th Cir.2000); *Petty v. Timken Corporation,* 849 F.2d 130 (4th Cir.1988), appellant Renner asserts that the settlement terms set forth on the record before the Circuit Court in this action lacked sufficient detail to constitute a binding agreement. A review of the transcript of the December 20, 2000, hearing supports that assertion. The terms as outlined by Triad's counsel were relatively brief compared to the import of granting an easement across a 120 acre tract of land to access 5 oil and gas wells on adjoining property, with an accompanying gas gathering line and a residential service line. In any event, upon remand, the parties would be warranted in seeking a determination from the Circuit Court concerning the sufficiency of the settlement terms set forth during the December 20, 2000, hearing.

Upon all of the above, the July 31, 2002, order of the Circuit Court of Tyler County is reversed, and this action is remanded to that Court for proceedings consistent with this opinion.

Reversed and remanded.