# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

Iaeger Energy Development, LLC, a
West Virginia limited liability
corporation, Marco Land Co., Inc., a
West Virginia corporation, and
Vivian L. Watkins, as Administratrix
of the Estate of Myrtle L. Davis,
Defendants Below, Petitioners

**FILED**

**January 13, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs) No. 18-0409  (McDowell County 15-C-24-S and 15-C-43-M)

Terry W. Moore and
Cedar Branch Mining, LLC, a
West Virginia limited liability company,
Plaintiffs Below, Respondents

## MEMORANDUM DECISION

Petitioners Iaeger Energy Development, LLC, Marco Land Co., Inc., and Vivian L. Watkins, Administratrix of the Estate of Myrtle L. Davis, by counsel Elizabeth G. Kavitz, J.A. Curia, III, David J. Mincer, and Adam K. Strider, appeal the Circuit Court of McDowell County's April 25, 2018, order that granted Respondents Terry W. Moore and Cedar Branch Mining, LLC's, motion to enforce the terms of a settlement agreement. Respondents, by counsel H. Truman Chafin, Letitia Chafin, and Howard M. Persinger, III, filed a response. Petitioners submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

<u>The Parties</u>

Petitioners Iaeger Energy Development, LLC ("Iaeger"), and Marco Land Co., Inc. ("Marco") were solely owned by C.O. Davis, Jr., and his wife, Myrtle L. Davis, both of whom are now deceased. Mr. and Mrs. Davis also created and controlled several purported shell entities, including Red Bird Pocahontas Land Company, LLC ("Red Bird"); New Red Ash Poca Land Company, LLC ("New Red Ash"); and Davis Whaley, LLC. Petitioner Vivian L. Watkins is Mrs. Davis's sister and the administratrix of her estate. (In 2013, Mr. Davis predeceased his wife and,

1

in his will, left her all of his assets. Mrs. Davis died in 2016, during the pendency of this litigation, and Petitioner Watkins was substituted as a party in her stead). Respondent Terry W. Moore is the principal and co-manager of Respondent Cedar Branch Mining, LLC.

Factual and Procedural History

On January 23, 2008, C.O. Davis, Jr., on behalf of Petitioners Iaeger and Marco, as lessors, and Respondent Moore, as lessee, entered into two leases of certain coal property located in the Johnnycake area of Huff Creek District, Wyoming County, and the adjacent Sandy River District of McDowell County, West Virginia. The leases were recorded at Deed Book 518, page 472, and Deed Book 518, page 483, respectively. Under these leases, Iaeger and Marco purported to lease to Respondent Moore all the coal located in all seams above the Gilbert Seam situated on certain tracts of the property. The leases gave respondents general warranties of title.

By leases dated September 26, 2012, and November 21, 2012, portions of the same property previously leased to Respondent Moore were purportedly leased to Emmaus Partners, LLC ("Emmaus"), a defendant below. The September 26, 2012, lease was by and between Red Bird and Mr. Davis, as lessors, and Emmaus, as lessee. It was recorded at Deed Book 563, page 37. The November 21, 2012, lease was a so-called "top lease" that was effective subject to several other leases, including the September 26, 2012, lease. This lease was by and between Mr. Davis, Mrs. Davis, Red Bird, Marco, New Red Ash, and Davis Whaley, as lessors, and Emmaus, as lessee. It was recorded at Deed Book 563, page 57.

The September 26, 2012, and November 21, 2012, leases with Emmaus directly conflicted with the grants made in the 2008 leases with respondents. According to respondents, they became aware of the 2012 leases as Emmaus, in 2014, began the process of attempting to secure mining permits for the property.

Respondents filed a complaint in the Circuit Court of McDowell County against petitioners, Emmaus, and others in February 2015,[1] alleging claims, relevant to this appeal, that Petitioners Iaeger and Marco breached the general warranties of title contained in the 2008 leases. Respondents also alleged that both Iaeger and Marco "were organized, incorporated, controlled and dominated by, and were the 'alter egos' of'" Mr. and Mrs. Davis, and, as such, the Davises were personally liable for the actions of Iaeger and Marco.[2]

On November 30, 2017, a pre-trial and settlement conference ("settlement conference") was held before the circuit court. During the course of the settlement conference, the court granted

---

[1] Petitioners amended the complaint in March of 2016, following Mrs. Davis's death, for the purpose of substituting Petitioner Watkins as a party.

[2] At the same time, several of the defendants named in respondents' complaint filed a separate action against respondents in the Circuit Court of McDowell County (No. 15-C-43-M) alleging ownership of the property purportedly leased to respondents by Petitioner Iaeger and asserting actions to quiet title, ejection, and for slander of title. The circuit court later consolidated that action with the present one. The claims involving the other defendants in both actions have been settled and dismissed and are not relevant to the present appeal.

2

respondents' motion for summary judgment on their "veil piercing" claims against the Estate of Mrs. Davis. The court determined that, based upon the deposition testimony of the Davises' longtime bookkeeper, Don Morgan, Petitioners Iaeger and Marco were alter-egos of C.O. and Myrtle Davis, thereby subjecting Mrs. Davis's estate to liability in this action.

Also during the November 30, 2017, settlement conference, settlements between respondents and petitioners and respondents and Emmaus were reached. Thereafter, in a three-page comprehensive e-mail to counsel for Petitioner Watkins and Emmaus, counsel for respondents set out the terms of the settlement. The December 7, 2017, e-mail stated that, as between Emmaus and respondents, (1) Emmaus would forego all of its lease rights to seams located above the Gilbert Seam; (2) respondents would forego all of their lease rights to the Gilbert Seam and below; and (3) in order to effectuate the foregoing, Emmaus would partially assign to respondents its rights as lessee under the September 26, 2012, and November 21, 2012, leases, by executing an assignment to be drafted by respondents' counsel. Emmaus also agreed, with regard to a certain tract (Tract 18), to pay an overriding royalty to respondents in the amount of $1.00 per ton, up to $350,000, with a $15,000 annual minimum.

As between petitioners and respondents, the December 7th e-mail set forth the following terms: (1) petitioners will make a $60,000 one-time cash payment to respondents; (2) petitioners will provide royalty credits in the amount of $80,000 to respondents on royalties for coal mined by respondents under the partially assigned 2008 leases as well as under a lease that was negotiated with the other defendants; (3) petitioners will convey certain leased property directly to respondents by quitclaim deed; (4) petitioners will execute a written consent for the partial assignment of the leases by Emmaus to respondents; and (5) petitioners will execute an amendment of the leases assigned by Emmaus to respondents reflecting (a) a tonnage royalty of 5%; (b) no minimum annual royalty payable by respondents to petitioners; and (c) a twenty-five year lease term.

On December 18, 2017, having received no objection to the terms outlined in the December 7th e-mail, respondents' counsel forwarded settlement documents to counsel for petitioners and Emmaus that included (1) a draft settlement agreement and general release, (2) a draft partial assignment, assumption and restatement of leases, lease amendment, consent to assign, release and overriding royalty agreement, and (3) a draft quitclaim deed, fully effecting the terms outlined in the December 7th e-mail.

On December 22, 2017, petitioners' counsel, via e-mail, advised respondents' counsel that she was still reviewing the draft settlement documents and had only seen a minor issue regarding the timing of payment. Respondents' counsel responded on January 2, 2018, with a suggested resolution. On January 5, 9, and 18, 2018, petitioners' counsel again communicated with respondents' counsel, indicating that she was continuing to review the draft documents with her client but did not suggest that she disagreed with any of the core terms. [3]

---

[3] The portion of the settlement involving Emmaus was executed by a separate release and partial assignment of the 2012 leases. Emmaus did not challenge any of the terms set forth therein.

Ultimately, on January 22, 2018, petitioners' counsel advised respondents' counsel that, while she affirmed certain terms set forth in the draft settlement documents, she specifically rejected an amendment to the partially assigned portions of the 2012 leases, on behalf of the lessors (petitioners), which would (1) lower the applicable tonnage royalty due petitioners from respondents from 7% to 5%, (2) do away with a $10,000 minimum annual royalty, and (3) extend the lease terms from five years to twenty years.[4]

Respondents thereafter filed a motion to enforce the settlement as set forth in the December 7, 2017, e-mail and the corresponding settlement documents. Petitioners filed a response, and a hearing on the motion was conducted on February 28, 2018.

By order entered on April 25, 2018, the circuit court granted respondents' motion to enforce the settlement and ordered judgment against petitioners, jointly and severally, in the amount of $82,773.03, plus accrued interest and attorney's fees. The court further ordered Petitioner Watkins, on behalf of the remaining defendants, to execute settlement documents effectuating the terms of the settlement in a form substantially similar to that which was submitted by respondents in connection with their motion to enforce. The circuit court ordered that if Petitioner Watkins failed to execute the documents within ten days, then a Special Commissioner would be appointed pursuant to West Virginia Code § 55-12-7[5] to execute the same on her behalf and on behalf of the remaining defendants. It is from this order that petitioners now appeal.

Discussion

This Court has stated that when it "undertakes the appellate review of a circuit court's order enforcing a settlement agreement, an abuse of discretion standard of review is employed." *Riner v. Newbraugh*, 211 W. Va. 137, 140, 563 S.E.2d 802, 805 (2002) (quoting *DeVane v. Kennedy,* 205 W. Va. 519, 527, 519 S.E.2d 622, 630 (1999)). *See also Burdette v. Burdette Realty Improvement, Inc.*, 214 W. Va. 448, 452, 590 S.E.2d 641, 645 (2003). "The reason for this deferential standard is that '[b]oth law and equity favor repose of litigious matters. Compromise by parties of their differences is favored by all courts. When a matter has thus been put at rest, it should not be disturbed except for grave cause.'" *Riner*, 211 W. Va. at 140, 563 S.E.2d at 805 (internal citations omitted).

On appeal, petitioners argue that the circuit court abused its discretion in granting respondents' motion to enforce the settlement. They contend that there is no evidence that the parties agreed to the disputed terms as the terms of the settlement were not spread upon the record at the time of the November 30, 2017, settlement conference and approved by the parties. Petitioners further contend that respondents failed to prove that there was a meeting of the minds as to the contested terms and that, to the contrary, there are factual disputes as to what the parties contemplated and agreed to at the settlement conference. As a result, petitioners argue, the circuit

---

[4] There was a discrepancy between the lease term as set forth in the December 7, 2018, e-mail (twenty-five years) and the draft settlement documents (twenty years).

[5] The circuit court order contained a scrivener's error in that it cited to West Virginia Code § 55-7-12 rather than West Virginia Code § 55-12-7.

court erred in enforcing the purported settlement.

This Court has declared that "'[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation[.]'" *DeVane*, 205 W. Va. at 522, 519 S.E.2d at 625, syl. pt. 6, in part (quoting syl. pt. 1, in part, *Sanders v. Roselawn Mem'l Gardens,* 152 W. Va. 91, 159 S.E.2d 784 (1968)). Nonetheless, we construe settlement agreements "as any other contract." *Burdette*, 214 W. Va. at 452, 590 S.E.2d at 645 (internal citation omitted). "A meeting of the minds of the parties is a *sine qua non* of all contracts." *Riner*, 211 W. Va. at 139, 563 S.E.2d at 804, syl. pt. 4 (citations omitted).

Petitioners argue that there was clearly no meeting of the minds as to the purported settlement because the settlement drafted by respondents effectively created new lease terms that were not agreed upon and that unilaterally benefitted respondents – that is, a lower royalty payment, elimination of the minimum royalty, and a twenty-year extension of the lease containing unfavorable provisions. According to petitioners, this Court previously reversed a lower court's order enforcing a written settlement agreement that included provisions that were neither addressed during the mediation conference nor set forth on the record during proceedings before the circuit court. *See Triad Energy Corp. of W. Va. v. Renner*, 215 W. Va. 573, 577, 600 S.E.2d 285, 289 (2004). At issue in *Triad* were provisions in a written settlement agreement that were intended to resolve a dispute concerning Triad's claim that it had a right to cross a landowner's property to access its oil and gas well on adjoining land. *See id.* at 574, 600 S.E.2d at 286. The contested provisions were, according to Triad, "previously outlined on the record" and "were reflected in the agreement by way of standard form oil and gas provisions which a reasonable person would understand would be included in a settlement document of that nature." *Id.* This Court disagreed and held that there was no meeting of the minds concerning the written agreement, concluding that the "additional provisions [to] the written settlement agreement . . . all of which were favorable to Triad, were material, unilateral variations of the terms previously set forth before the [c]ircuit [c]ourt." *Id.* at 577, 600 S.E.2d at 289. This Court further determined that the settlement terms spread upon the record before the court below "lacked sufficient detail to constitute a binding agreement." *Id.* at 578, 600 S.E.2d at 290.

In this case, petitioners argue that no settlement agreement was ever placed upon the record following the November 30, 2017, settlement conference, and that there was no evidence, other than the proffer of respondents' counsel, of the settlement terms. Petitioners argue that there was no proof of a meeting of the minds and that enforcement of the settlement was an abuse of the circuit court's discretion.[6]

---

[6] Petitioners also argue that the statute of frauds precludes the enforcement of an oral settlement agreement that includes a transfer of real property interests. Petitioners failed to raise this alleged error before the circuit court. "'"In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken." Syllabus Point 1, *Mowery v. Hitt*, 155 W. Va. 103 [, 181 S.E.2d 334] (1971).' Syl. pt. 1, *Shackleford v. Catlett*, 161 W. Va. 568, 244 S.E.2d 327 (1978)." Syl. Pt. 3, *Voelker v. Frederick Bus. Properties Co.*, 195 W. Va. 246, 465 S.E.2d 246 (1995).

We find no error. Following the November 30, 2017, settlement conference, counsel for respondents memorialized the terms of the settlement in an e-mail, which he then forwarded to counsel for petitioners and Emmaus on December 7, 2017; although this e-mail included the terms that petitioners now dispute, petitioners failed to object to them.[7] Thereafter, on December 18, 2017, respondents' counsel forwarded to petitioners' counsel draft settlement documents that, again, included the now-disputed terms. In responsive e-mail correspondence, petitioners' counsel noted a minor issue regarding the timing of payment that had nothing to do with the terms she now claims her clients never agreed to. Moreover, notably absent from subsequent correspondence between counsel was any reference to the disputed terms by petitioners' counsel. It was not until January 22, 2018, forty-six days after the initial December 7th e-mail, that petitioners finally claimed that the settlement documents did not accurately reflect the parties' agreement.[8] Additionally, the circuit court's April 25, 2018, order enforcing the settlement clearly stated that it "had worked with and helped facilitate the settlement that was reached" on November 30, 2017, that "the terms of [the settlement] were recited in the presence of the [c]ourt,"[9] and that "there were no objections or confusion mentioned to the [c]ourt at that time." Given all of these facts, we conclude that the evidence supports a finding that the parties had a meeting of the minds regarding the terms of the settlement and that the circuit court did not abuse its discretion in enforcing it.[10]

We next address petitioners' argument that the circuit court erred in appointing a special commissioner to execute an unenforceable settlement. As we have established, the settlement is, as a matter of law, enforceable. West Virginia Code § 55-12-7 states:

> A court of law or equity, in a suit in which it is proper to decree or order the execution of any deed or writing, may appoint a commissioner to execute the same; and the execution thereof shall be as valid to pass, release, or extinguish the right, title and interest of the party on whose behalf it is executed, as if such party had been at the time capable in law of executing the same and had executed it.

---

[7] Though petitioners' counsel claimed that she never received the December 7th e-mail from respondents' counsel, she did not dispute that the correspondence was sent to her correct e-mail address and that she had received multiple other e-mails from respondents' counsel at that address. The circuit court clearly believed that petitioners' counsel's claim was not credible.

[8] At no time during the course of these proceedings have petitioners submitted to the circuit court a sworn affidavit contesting their agreement to all the terms set forth in the initial December 7th e-mail and subsequent settlement documents.

[9] In a January 26, 2018, e-mail to petitioners' counsel, respondents' counsel reminded her that "the terms of the settlement were recited before [the circuit court] at the conclusion of the mediation[.]"

[10] Because we have determined that the settlement agreement, to which Petitioner Watkins is a party, is enforceable, we need not address petitioners' assignment of error that the circuit court erred in piercing the corporate veil between the Estate of Myrtle Davis and the petitioner entities, Marco and Iaeger.

Petitioners argue simply that respondents failed to make a motion asserting facts that would support the appointment of a special commissioner and further failed to present any evidence showing that such an appointment is necessary under the circumstances. We find that petitioners have failed to adequately develop this assignment of error with any supporting legal authority or argument. This Court has made clear that "'[a] skeletal "argument," really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs.'" *State, Dep't of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995)(quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)). Indeed, "[a]lthough we liberally construe briefs in determining issues presented for review, . . . [issues] mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

Similarly, in a brief footnote, petitioners argue, again in passing, that respondents' request for attorney's fees and costs incurred in connection with their motion to enforce the settlement should have been denied because there was no evidence that petitioners acted "in bad faith, vexatiously, wantonly or for oppressive reasons in the settlement dialogue[.]" Petitioners did not brief this issue as an assignment of error on appeal nor did they develop it in a manner that is adequate for meaningful appellate review. Petitioners' casual mention of this issue thus failed to preserve it for appeal and will not be considered. *See id.*

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 13, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

7