590 S.E.2d 641

L.G. BURDETTE and Michael Burdette, Plaintiffs Below, Appellants,

v.

BURDETTE REALTY IMPROVEMENT, INC., et al., Defendants Below, Appellees.

No. 31152.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2003.

Decided Oct. 14, 2003.

Harry F. Bell, Jr., Esq., Damon L. Ellis, Esq., Bell & Bands, PLLC, Margaret L. Workman, Esq., Charleston, for Appellant.

Steven L. Thomas, Esq., Kay, Casto & Chaney, Charleston, for Michael Burdette.

Richard L. Gottlieb, Esq., Lewis, Glasser, Casey & Rollins, Charleston, for Appellees.

PER CURIAM.

This action is before this Court upon the appeal of the appellant, L.G. Burdette, from the April 2, 2002, order of the Circuit Court of Kanawha County, West Virginia, granting the motion of the appellees, Burdette Reality Improvement, Inc., *et al.*, to compel the enforcement of a settlement agreement in a dispute between the parties concerning their family-owned real estate business. Appellant L.G. Burdette contends that, even though he signed the agreement, it is invalid for a number of reasons and that he should, therefore, be permitted to proceed to trial against the appellees. Appellant L.G. Burdette also appeals from an October 1, 2002, order of the Circuit Court denying him relief upon his claim that the settlement agreement, even if valid, has been rendered unenforceable because the appellees have since conveyed a parcel of land to a third party which, under the agreement, was to be conveyed to the appellant.

This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons stated below, this Court reverses the April 2, 2002, order of the Circuit Court compelling enforcement of the settlement agreement. Specifically, this Court is of the opinion that the circumstances surrounding the execution of the agreement demonstrate that the parties failed to reach a meeting of the minds concerning a settlement of the dispute. Consequently, the October 1, 2002, ruling of the Circuit Court, with regard to the appellant's claim that the settlement agreement is unenforceable because of the appellees' convey-ance to a third party, is moot. The propriety of the conveyance, however, in terms of its effect upon the value of the family business, may be raised as part of the litigation below.

Accordingly, the above orders of the Circuit Court of Kanawha County are reversed and set aside, and this action is remanded to the Circuit Court for proceedings consistent with this opinion.

## I.

### THE ORDER OF APRIL 2, 2002

Burdette Realty Improvement, Inc., is a closely held corporation in the business of owning and managing various parcels of real estate. Appellant L.G. Burdette and his son Michael are the owners of one-third of the shares of the corporation. The appellant's brother, Foster Burdette, and the appellant's sister, Freda Burdette Larch, and their respective children, are the owners of the remaining two-thirds. The assets of Burdette Realty consist of holdings and developments worth several million dollars. Central to the dispute between the parties, however, is the wide disagreement concerning the precise value of the business. Whereas the appellees indicated that Burdette Realty is worth approximately 6 million dollars, appellant L.G. Burdette stated that Burdette Realty is worth 16 million dollars.

In November 1999, appellant L.G. Burdette and Michael Burdette, as minority shareholders, filed an action in the Circuit Court of Kanawha County against the appellees. The appellant and Michael Burdette were represented by attorney, William De-Paulo. The complaint alleged self-dealing and breach of fiduciary obligations by the appellees and sought declaratory relief in the form of a determination of the nature and extent of the corporate duties owed by the appellees to L.G. Burdette and Michael Burdette. The appellees filed answers denying the allegations of the complaint and filed a counterclaim asserting that appellant Burdette and Michael converted real and personal property belonging to Burdette Realty to their own purposes without corporate authorization.

Settlement negotiations between the parties were on-going following the institution of the action and reached a critical plateau at two points during the litigation. The first occurred on May 24, 2000, when a letter was signed by the parties' respective attorneys indicating that the action would be terminated upon an exchange of various holdings of the parties. Specifically, Burdette Realty was to convey certain parcels of land to a newly formed corporation to be owned by appellant L.G. Burdette and Michael Burdette. Appellant Burdette and Michael, in turn, were to surrender their shares in Burdette Realty to the appellees.

No settlement, however, was ever consummated upon the May 24, 2000, letter. Although appellant Burdette, in his 70s and in failing health, had often relied upon his son, Michael, with regard to business transactions, he objected to the terms of the May 24 letter. Moreover, appellant Burdette asserted that, although attorney DePaulo may have been authorized to sign the letter upon Michael's behalf, he had never been authorized to sign the letter upon the appellant's behalf. In the meantime, an escrow account established pursuant to the May 24 letter for the deposit of rental payments concerning the parcels to be conveyed in settlement, which account was to benefit the appellant and Michael, was unilaterally closed by appellee Foster Burdette because the appellant and Michael allegedly failed to vacate the premises of an unrelated parcel.

The second critical point in settlement negotiations, of primary concern in this appeal, occurred in January and February 2001. In January 2001, the appellees sent a proposed settlement agreement, executed by them, to the office of attorney DePaulo. The agreement was comparable to the proposal of May 24, 2000, in that it sought to terminate the action upon an exchange of various holdings of the parties. As the January 2001 agreement provided:

[A]s an inducement to the dismissal of the Action, the shareholders of BRI [Burdette Realty] have agreed to transfer the properties commonly referred to as the Wickham Road Business Center, located in Melbourne, Florida, the Lake Chaweva Goff Mountain Road Storage Units, located in Cross Lanes, West Virginia, and the Fairplain Property, located in Jackson County, West Virginia (collectively the "Split Off Parcels") into UPI, a wholly-owned subsidiary of BRI.

[I]mmediately following the aforementioned transfers, the Minority Shareholders would divest the entirety of their ownership interest in BRI in exchange for sole ownership of UPI.

In February 2001, appellant L.G. Burdette spoke with various individuals concerning the agreement, including attorney DePaulo and a Certified Public Accountant by the name of Mike Ellis. Ellis later testified that, although he discussed the terms of the agreement with appellant Burdette, he was uncertain whether the appellant understood the agreement or, if he did, whether he was willing to accept it.

On February 17, 2001, appellant L.G. Burdette and Michael Burdette met in attorney DePaulo's office to discuss the proposed settlement agreement. As later determined by the Circuit Court, Michael, who was experiencing personal financial difficulties at the time, vigorously attempted to persuade his father to join him in signing the agreement and ending the litigation. At that time, appellant L.G. Burdette signed the agreement, subsequently maintaining, however, that he did so as the result of unwarranted pressure from Michael and as the result of health problems and medication he was taking.

After returning home, appellant L.G. Burdette contacted attorney DePaulo and told him that he objected to the settlement agreement. According to the appellant, the agreement did not reflect the true value of his shares in Burdette Realty. Appellant Burdette instructed DePaulo not to deliver the agreement to the appellees. Attorney DePaulo assured the appellant that no delivery would take place. Nevertheless, on February 19, 2001, Michael Burdette entered DePaulo's office in the attorney's absence and took the signed agreement without either L.G. Burdette's or DePaulo's authorization. Michael then delivered the agreement to the attorneys for the appellees. As a result, DePaulo sent a facsimile transmission to the

appellees' attorneys indicating that they should not proceed with the settlement: (1) unless they were to receive the signed settlement agreement directly from DePaulo or (2) unless they were to receive an authorization from both appellant L.G. Burdette and Michael Burdette. In reply, one of the attorneys for the appellees sent a facsimile transmission to DePaulo stating as follows:

I am in receipt of documents purporting to represent the fully executed settlement documents in the above referenced matter. Per our conversation this morning, the documents will remain in my custody pending receipt of written notice from you that both L.G. Burdette and Michael Burdette have authorized the release of the documents.

No such authorized release of the settlement agreement was ever sent to the appellees or their attorneys. Instead, on February 26, 2001, appellant L.G. Burdette appeared at the office of the appellees' attorneys and retrieved the signed settlement agreement.

In April 2001, the appellees filed a motion to compel enforcement of the settlement agreement, relying upon the fact that the signatures upon the agreement included those of appellant L.G. Burdette and Michael Burdette. The Circuit Court subsequently conducted a number of evidentiary hearings and, pursuant to the order entered on April 2, 2002, granted the appellees' motion. The Circuit Court found that L.G. Burdette knowingly and intelligently signed the settlement agreement on February 17, 2001, and that, therefore the agreement should be enforced. In that regard, the Circuit Court concluded that L.G. Burdette was bound by the agreement at the time he affixed his signature to it, rather than when the agreement was delivered to the appellees. Specifically, the Circuit Court determined that, inasmuch as the settlement agreement itself provided that it was "intended as an entire and complete statement of the terms of the agreement between the parties" and that the agreement was "effective only upon its execution by all of the parties," the parties had not conditioned the effectiveness of the settlement agreement upon delivery. Thus, the

actions of Michael Burdette in wrongfully taking the agreement and delivering it to the appellees was found to be irrelevant.

II.

THE ORDER OF OCTOBER 1, 2002

In September 2002, appellant L.G. Burdette sought relief in the Circuit Court from the April 2, 2002, order. According to L.G. Burdette, the settlement agreement had been rendered unenforceable because, after the April 2 order, the appellees unilaterally conveyed the parcel in Florida, described above in the agreement, to a third party. Specifically, by deed dated May 30, 2002, Burdette Realty, by its President, appellee Foster Burdette, conveyed the Florida parcel to an unrelated entity, Miramar Investment, L.L.C., for $850,000. Burdette Realty then purchased a parcel of land in Lewisburg, West Virginia, which the appellees asserted may be transferred to L.G. Burdette and Michael Burdette in place of the Florida parcel.

Appellant L.G. Burdette asserted that the sale of the Florida parcel and the acquisition of the Lewisburg property was without his consent and constituted a breach by the appellees of a material element of the settlement agreement. Appellant Burdette argued that, consequently, the settlement agreement, in the form considered by the Circuit Court, is impossible to enforce. The appellees, on the other hand, alleged financial difficulties with regard to the Florida parcel and asserted that the exchange of properties was, in fact, more favorable to appellant L.G. Burdette and Michael than the retention of the Florida parcel. Moreover, the appellees asserted that L.G. Burdette had been informed of the contract of sale concerning the Florida parcel but failed to raise a timely objection.

On October 1, 2002, the Circuit Court denied appellant L.G. Burdette relief with regard to the sale of the Florida parcel. The order did not set forth specific reasons, findings or conclusions in support of the Court's ruling. Rather, the October 1 order stated: "The Court ... is of the opinion that a hearing is not necessary in order for the

Court to make a decision in this matter and good cause or other justification does not exist to grant said motion."

In February 2003, this Court granted appellant L.G. Burdette's appeal from the April 2, 2002, and October 1, 2002, orders of the Circuit Court. A stay of the enforcement of the settlement agreement has been granted pending appeal.

## III.

## DISCUSSION

As this Court reaffirmed in *Woodrum v. Johnson,* 210 W.Va. 762, 771, 559 S.E.2d 908, 917 (2001), the law favors and encourages the resolution of controversies by contracts of compromise and settlement, rather than by litigation. Syl. pt. 1, *Sanders v. Roselawn Memorial Gardens,* 152 W.Va. 91, 159 S.E.2d 784 (1968). Nevertheless, settlement agreements are to be construed "as any other contract," *Floyd v. Watson,* 163 W.Va. 65, 68, 254 S.E.2d 687, 690 (1979), and, as noted in syllabus point 1 of *Martin v. Ewing,* 112 W.Va. 332, 164 S.E. 859 (1932): "A meeting of the minds of the parties is a *sine qua non* of all contracts." Syl. pt. 4, *Riner v. Newbraugh,* 211 W.Va. 137, 563 S.E.2d 802 (2002); syl. pt. 1, *Wheeling Downs Racing Association v. West Virginia Sportservice,* 157 W.Va. 93, 199 S.E.2d 308 (1973).

The meeting of the minds requirement has been recognized by this Court as specifically applicable to settlement agreements. *See, Riner, supra,* 211 W.Va. at 144, 563 S.E.2d at 809; *State ex rel. Evans v. Robinson,* 197 W.Va. 482, 475 S.E.2d 858 (1996), *cert. denied,* 519 U.S. 1121, 117 S.Ct. 971, 136 L.Ed.2d 855 (1997), "a court may only enforce a settlement when there has been a definite meeting of the minds." 197 W.Va. at 485, 475 S.E.2d at 861. In *O'Connor v. GCC Beverages,* 182 W.Va. 689, 691, 391 S.E.2d 379, 381 (1990), this Court stated: "It is well understood that '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of

the parties.' 15A C.J.S. *Compromise & Settlement,* sec. 7(1) (1967)."

This Court, in syllabus points 7 and 8 of *DeVane v. Kennedy,* 205 W.Va. 519, 519 S.E.2d 622 (1999), restated the following principles:

7. "Where parties have made a settlement..., such settlement is conclusive upon the parties thereto as to the correctness thereof in the absence of accident, mistake or fraud in making the same." Syllabus point 1, in part, *Calwell v. Caperton's Adm'rs,* 27 W.Va. 397 (1886).

8. "A party to such settlement seeking to re-open the same on any of said grounds must distinctly allege and by clear and convincing evidence prove the particular facts, wherein such accident, mistake or fraud consists ...." Syllabus point 3, in part, *Calwell v. Caperton's Adm'rs,* 27 W.Va. 397 (1886).

*See also,* syl. pt. 4, *Berardi v. Meadowbrook Mall Company,* 212 W.Va. 377, 572 S.E.2d 900 (2002), clear and convincing proof required to warrant setting aside a settlement agreement; syl. pt. 5, *Smith v. Monongahela Power Company,* 189 W.Va. 237, 429 S.E.2d 643 (1993), clear and convincing evidence required to establish that a settlement agreement is lacking in good faith.

Finally, this Court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement. *See,* syl. pt. 1, *Riner v. Newbraugh, supra,* stating that an abuse of discretion standard applies to the review of an order enforcing a settlement agreement "reached as a result of court-ordered mediation."

Appellant L.G. Burdette contends that he signed the settlement agreement on February 17, 2001, as the result of unwarranted pressure from his son, Michael, and as the result of health problems and medication he was taking. As the appellees emphasize, however, the Circuit Court determined that those assertions, although proven by appellant Burdette to some extent, failed to justify setting aside the agreement. Rather, the appellees assert that the signing of the agreement by appellant Burdette was the

culmination of weeks and months of negotiations between the parties which resulted in appellant Burdette being familiar with the specific terms of the agreement. Therefore, the appellees argue that the Circuit Court ruled correctly in granting the motion to compel the enforcement of the settlement agreement.

■ This Court is of the opinion, however, that the issue of appellant L.G. Burdette's competency to understand and execute the settlement agreement is not dispositive of this appeal. As the authorities cited above establish, the meeting of the minds requirement of contract law is applicable to settlement agreements such as the one now before this Court. Here, the record demonstrates by clear and convincing evidence that appellant Burdette, an indispensable signatory to the agreement, and the appellees failed to reach a meeting of the minds concerning a settlement of their dispute regarding the family business.

As characterized by appellant Burdette during the proceedings below, a settlement of the business affairs and litigation between the parties was a "moving target." The parties are not in accord as to whether the February 17, 2001, agreement sought to be enforced by the appellees constitutes a new proposal or whether that agreement is simply a modification of the previous letter agreement of May 24, 2000. In any event, after a purported settlement had been reached on May 24, 2000, that settlement failed as not having been authorized by appellant L.G. Burdette. Importantly, independent of L.G. Burdette's objection to the May 24, 2000, settlement was the unilateral closing by appellee Foster Burdette of the escrow account, discussed above, which action went beyond the terms detailed in the May 24, 2000, letter. Thus, in the past, both L.G. Burdette and the appellees have sought to terminate or modify an ostensibly finalized settlement agreement.

Subsequently, appellant Burdette and Michael Burdette were in open discord as to whether they should sign the settlement agreement of February 17, 2001. That discord was apparent to William DePaulo who later withdrew as their attorney and who,

after the taking of the signed agreement by Michael, sent the facsimile transmission to the appellees' attorneys indicating that settlement should not proceed without proper authorization.

Although the appellees argue that they are not to be charged with the actions of Michael Burdette in terms of the enforceability of the February 17, 2001, agreement, they were no doubt aware, by way of DePaulo's communication, that a problem existed concerning the agreement. Significantly, as set forth above, one of the appellees' attorneys responded as follows:

I am in receipt of documents purporting to represent the fully executed settlement documents in the above referenced matter. Per our conversation this morning, the documents will remain in my custody pending receipt of written notice from you that both L.G. Burdette and Michael Burdette have authorized the release of the documents.

As stated above, no such authorized release of the settlement agreement was ever sent to the appellees or their attorneys.

Such circumstances do not constitute a meeting of the minds in settlement of the underlying dispute, the signature of appellant Burdette notwithstanding. Those circumstances include the additional facts that: (1) appellant Burdette contacted attorney DePaulo to void the February 17, 2001, settlement agreement while the agreement was in the sanctity of DePaulo's law office and before it was taken by Michael, (2) the taking of the agreement from DePaulo's law office by Michael was wrongful and (3) appellant Burdette retrieved the agreement from the appellees' attorneys relatively soon after the above facsimile transmissions had been sent.

The unique circumstances of this action distinguish it from the case of *Moreland v. Suttmiller*, 183 W.Va. 621, 397 S.E.2d 910 (1990). In affirming a circuit court order to enforce a settlement agreement in a civil action, this Court, in *Moreland*, stated: "Once a competent party makes a settlement and acts affirmatively to enter into such settlement, his second thoughts at a later time as to the wisdom of the settlement [do] not

constitute good cause for setting it aside." 183 W.Va. at 625, 397 S.E.2d at 914. Unlike the situation concerning appellant Burdette, the plaintiffs, in *Moreland,* who sought to avoid enforcement of the agreement, had personally acknowledged their acceptance of the agreement in the presence of the circuit court. In view of that acknowledgment, the plaintiffs' uncertainty concerning whether they should, in fact, follow through with the settlement was found to be unjustified. By contrast, an inability of the parties in this action to reach a true meeting of the minds has pervaded the entire settlement process from beginning to end. Therefore, the Circuit Court committed error in granting the appellees' motion to compel enforcement of the settlement agreement of February 17, 2001, and the agreement should be set aside.

Consequently, the October 1, 2002, order of the Circuit Court, denying appellant L.G. Burdette relief with regard to his claim that the appellees rendered the agreement inoperative by selling the Florida parcel to a third party, is moot. As stated above, the propriety of that conveyance, in terms of its effect upon the value of the family business, may nevertheless be raised as part of the litigation below.

### IV.

### CONCLUSION

Upon all of the above the April 2, 2002, and October 1, 2002, orders of the Circuit Court of Kanawha County are reversed and set aside, and this action is remanded to the Circuit Court for proceedings consistent with this opinion.

Reversed and remanded.