618 S.E.2d 477

**Jamie C. METZ, Plaintiff
Below, Appellant,**

v.

**David M. METZ, Defendant
Below, Appellee.**

No. 32517.

Supreme Court of Appeals of West Virginia.

Submitted: June 8, 2005.

Filed: June 30, 2005.

Michele Rusen, Rusen Law Office, L.C., Parkersburg, for the Appellant.

George Y. Chandler, Parkersburg, for the Appellee.

The Opinion of the Court was delivered PER CURIAM.

PER CURIAM.

This is an appeal by Jamie Metz (hereinafter "Appellant") from an order of the Circuit Court of Wood County reversing a decision

of the Wood County Family Court which ordered the Appellant's former husband, David Metz (hereinafter "Appellee"), to pay the Appellant a sum equal to the final health insurance premium that Mr. Metz had paid for the first thirty-six months following the parties' divorce. The Appellant appeals the Circuit Court order to this Court and requests that this Court reinstate the Family Court order. Upon review ' of the briefs, arguments of counsel, and applicable precedent, this Court reverses the Circuit Court of Wood County and remands for entry of an order affirming the Family Court order.

## I. Factual and Procedural History

The Appellant and the Appellee were divorced on February 16, 2000. Pursuant to a separation agreement, incorporated within the divorce order,[1] the Appellant waived the right to alimony, with the specific exception that the Appellee would pay health insurance premiums on behalf of the Appellant under the COBRA[2] coverage. The separation agreement further provided that subsequent to the expiration of the thirty-six month CO-

---

1. The divorce order specified that "the written Agreement of the parties admitted into evidence as 'Joint Exhibit A' shall be, and the same is hereby, received by the Court, and that Paragraphs Nos. 3 through 24 of said written Agreement shall be, and the same are hereby, made an Order of the Court, as set forth verbatim herein...."

2. COBRA refers to federal legislation, the Consolidated Omnibus Budget Reconciliation Act, enacted to provide employees and qualified beneficiaries covered by an employment-related group health care plan with an opportunity to elect continuation of the coverage at the group rate after some qualifying event, including divorce. See 29 U.S.C. § 1161.

3. These relevant provisions are set forth in paragraphs ten and twelve of the separation agreement. Paragraph ten provides as follows:
   From and after the mutual execution of this Agreement, incident to alimony, the Husband shall pay nothing to the Wife. By the mutual execution of this Agreement, the Wife knowingly, intelligently, and voluntarily waives any claim which she might have against the Husband for an award of alimony, except as set forth in Paragraph No. 12, below.
   By the mutual execution of this Agreement, each of the parties stipulates and agrees that no Court shall hereafter have jurisdiction to

BRA coverage, the Appellee's "obligation ... shall not exceed the amount of the monthly premium payment for January 2003." That January 2003 payment was $296.98. Thus, according to the terms of the separation agreement, $296.98 is the permanent limit of the Appellee's obligation. The separation agreement further provided that the "Wife [Appellant] shall thereafter pay the remainder of each monthly premium." The agreement specified that no court could "modify" the "waiver of alimony."[3]

The Appellee initially satisfied the requirements of the separation agreement by paying the monthly premiums for thirty-six months. The COBRA coverage expired at the conclusion of that thirty-six month period, and the Appellant was thereafter unable to obtain health insurance due to a preexisting lupus condition.[4] The Appellee refused to provide any additional monetary support since the Appellant was not paying monthly health insurance premiums. Unable to obtain health insurance coverage, the Appellant relied upon her Medicare coverage, which did not

---

modify this permanent and irrevocable waiver of alimony.

Paragraph twelve provides as follows:
   From and after the mutual execution of this Agreement, incident to alimony, the Husband shall maintain in full force and effect the policy of hospitalization, major medical, and dental insurance currently maintained through his employment, pursuant to the provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) covering the costs of hospitalization, health care, and dental care of the Wife, and shall take all necessary action, including payment of the monthly premium payments thereon, to· secure the benefits of said policy for the benefit of the Wife; said alimony obligation to continue until the Wife remarries or dies, or until the Husband sooner dies.
   From and after the mutual execution of this Agreement, for a term and period of thirty-six (36) months, the obligation of the Husband pursuant to this paragraph shall be the entire amount of the monthly premium payment. From and after the 31st day of January, 2003, the obligation of the Husband pursuant to this paragraph shall not exceed the amount of the monthly premium payment for·January, 2003; the Wife shall thereafter pay the remainder of each monthly premium payment.

4. The parties were aware of the Appellant's lupus condition prior to the divorce.

include prescription drug coverage.[5]

On December 16, 2003, the Appellant filed a "Motion for Modification of Child Support and Spousal Support" in the Family Court of Wood County, seeking (1) an increase in child support; (2) the payment by the Appellee of a $40.00 dental bill for orthodontic work for the parties' daughter; and (3) the payment by the Appellee of $296.98 per month toward the Appellant's prescription drugs. The Family Court found that the Appellant was not entitled to a child support increase based upon the absence of a substantial change in the financial circumstances of the parties.[6] However, the Family Court ordered the Appellee to pay the $40.00 dental bill and to pay $296.98 monthly directly to the Appellant to be utilized as an offset to her medical prescription expenditures. The Family Court reasoned that "[t]he Defendant owes to the Plaintiff the amount of what he was paying for COBRA coverage for the Plaintiff as of January, 2003, irregardless of whether she is paying an insurance premium or using the spousal support for an offset to her medical prescriptions."

The Family Court further noted that the Appellant's "pre-existing prescription needs exceeded $600.00 per month which Medicare did not cover, and she had no other insurance carrier to meet this expense." The Family Court also addressed the Appellee's contention that the Appellant had waived the right to seek modification of his spousal support obligation. The Family Court rejected the Appellee's argument, explaining that "[a]lthough the parties waived the general alimony pursuant to Paragraph 10 of the Final Divorce Order, they carved out an exception for alimony as was awarded under Paragraph 12...."

The Appellee appealed the Family Court order to the Circuit Court, and the Circuit Court reversed the determination that the Appellee owed $296.98 monthly to the Appel-

lant. The Circuit Court stated only that the Family Court lacked jurisdiction to "modify" the agreed order based upon the specific language of the agreement limiting modification of the waiver of alimony.

The Appellant appeals to this Court, contending that the Family Court correctly resolved the matter by ordering the Appellee to pay $296.98 monthly to the Appellant and that the Circuit Court erred by determining that the Family Court lacked jurisdiction to so order.

## II. Standard of Review

This Court explained in *Burdette v. Burdette Realty Improvement, Inc.*, 214 W.Va. 448, 590 S.E.2d 641 (2003), that "this Court employs an abuse of discretion standard when reviewing a circuit court order enforcing a settlement agreement." 214 W.Va. at 452, 590 S.E.2d at 645. In syllabus point four of *Burgess v. Porterfield*, 196 W.Va. 178, 469 S.E.2d 114 (1996), this Court stated: "This Court reviews the circuit court's final order and ultimate disposition under an abuse of discretion standard. We review challenges to findings of fact under a clearly erroneous standard; conclusions of law are reviewed *de novo.*" *See also Banker v. Banker*, 196 W.Va. 535, 540–41, 474 S.E.2d 465, 470–71 (1996). Employing those standards, we address the issues raised in this appeal.

## III. Discussion

### A. Jurisdiction of the Family Court

The Circuit Court of Wood County based its reversal of the Family Court's decision upon the conclusion that the Family Court lacked jurisdiction. The Circuit Court stated specifically as follows: "The Family Court Judge being without jurisdiction to modify as agreed in original agreement, this ruling is reversed." Indeed, the separation agreement does provide that a court could

---

**5.** The Appellant indicated that she expends $600.00 to $750.00 monthly on prescription drugs.

**6.** The court declined to modify child support, noting that "[a] recalculation of child support with current income, pursuant to the income shares formula, does not meet the fifteen (15%)

percent increase necessary to warrant a change in current child support." Accordingly, the Appellee's child support obligation remained at $387.00 per month. The only issue pertinent to this appeal, however, deals with the payment of $296.98 monthly toward health costs for the Appellant.

not modify the *waiver of alimony* effected in the separation agreement.[7] However, the separation agreement specifies that the Appellant waived alimony, with the specific *exception* that the Appellee would still be required to pay health insurance premiums. As the Appellant contends, "in Paragraph Twelve, a provision expressly, explicitly, clearly and unambiguously excluded from Paragraph Ten's general waiver of alimony, [the Appellee] agreed to a permanent award of alimony to his former wife."

The Family Court did not modify the explicit waiver of alimony; it simply enforced the Appellee's obligation to pay for health insurance, albeit in a manner to which the Appellee objects. The actual focus of the Family Court's order was not upon the alimony waiver itself. The Family Court addressed the support obligation to which the Appellee agreed, rather than the waiver of alimony which was not subject to modification. Thus, the separation agreement's denial of court access to modify the *waiver* is not implicated by the Family Court's action. The Circuit Court was incorrect in its determination that the Family Court lacked jurisdiction to address the issue of the Appellee's payment for health insurance for the Appellant.

### B. The Family Court's Resolution

■ This Court has consistently recognized that "[o]ur general rule is that the circuit court which grants a divorce is vested by statute with continuing subject-matter jurisdiction to modify or alter its original order as to alimony and child support, as the changed circumstances of the parties may ... require." *Douglas v. Douglas,* 171

W.Va. 162, 163, 298 S.E.2d 135, 136–37 (1982) (citations omitted). West Virginia Code § 48–5–701 (2001) (Repl.Vol.2004) provides the statutory authority of a court to alter an award of alimony.[8] It provides as follows: "After the entry of a final divorce order, the court may revise the order concerning spousal support or the maintenance of the parties and enter a new order concerning the same, as the circumstances of the parties may require." Further guidance is provided by West Virginia Code § 48–6–201(b) (2001) (Repl.Vol.2004),[9] stating, in pertinent part, as follows:

Any award of periodic payments of spousal support shall be deemed to be judicially decreed and subject to subsequent modification unless there is some explicit, well expressed, clear, plain and unambiguous provision to the contrary set forth in the court-approved separation agreement or the order granting the divorce. Child support shall, under all circumstances, always be subject to continuing judicial modification.

As explained in the factual recitation above, the only "explicit, well expressed, clear, plain and unambiguous provision to the contrary" contained in the separation agreement in the present case provides a prohibition on altering the *waiver* of alimony. W. Va.Code § 48–2–16(a). Such language does not affect the ability of a court to modify the *exception to the waiver* of alimony regarding the payment for health insurance.

■ In syllabus point three of *In re Estate of Hereford,* 162 W.Va. 477, 250

---

7. This prohibition is found in paragraph ten of the separation agreement. As quoted above, the parties agreed that "no Court shall hereafter have jurisdiction to modify this permanent and irrevocable waiver of alimony."

8. The statutory scheme for divorce matters was recodified in 2001. Language similar to that presently contained in West Virginia Code § 48–5–701 was previously contained in West Virginia Code § 48–2–15(e) (1999), providing, in pertinent part, as follows: "After the entry of an order pursuant to the provisions of this section, the court may revise the order concerning the maintenance of the parties and enter a new order concerning the same, as the circumstances of the

parties may require." The earlier version was in effect at the time of the February 2000 entry of the divorce order in the present case. Any differences in the language of the two versions is insignificant to this Court's determination in this case.

9. The former similar statute was found at West Virginia Code § 48–2–16(a) (1999), providing as follows: "Any award of periodic payments of alimony shall be deemed to be judicially decreed and subject to subsequent modification unless there is some explicit, well expressed, clear, plain and unambiguous provision to the contrary set forth in the court-approved separation agreement or the order granting the divorce."

S.E.2d 45 (1978), this Court explained as follows:

> In all domestic relations cases where the final order is entered after 1 February 1979 wherever the court provides for a periodic payment (alimony) to a party either by reference to a property settlement agreement in the divorce decree itself or by incorporation of the property settlement agreement into the decree, regardless of whether the words "ratified," "approved," "confirmed," or "merged" are used, it shall be presumed that such award of periodic payments is judicially decreed alimony or alimony and child support, and unless there are specific words in the property settlement agreement or divorce decree to the contrary, any award of periodic payments shall be governed by the law of alimony and child support and not by contract law.

Syllabus point five of *Hereford* stated:

> In all domestic relations cases where the final order is entered after 1 February 1979 there shall be no special legal effect in the divorce decree attached to the words "merged," "ratified," "confirmed," "approved," "incorporated," etc., and where the parties and the court wish to do something other than award judicially decreed periodic payments for alimony or alimony and child support enforcement by contempt and subject to modification by the court, the parties must expressly set forth the different terms to which they agree and the court must expressly indicate his approval of their agreement.

This Court has also consistently held that the party seeking the modification has the burden of showing that a substantial change of circumstances occurred. *Goff v. Goff*, 177 W.Va. 742, 746, 356 S.E.2d 496, 500 (1987); *see also Hickman v. Hickman*, 210 W.Va. 608, 558 S.E.2d 607 (2001); *Price v. Price*, 205 W.Va. 252, 517 S.E.2d 485 (1999); *Zirkle v. Zirkle*, 172 W.Va. 211, 304 S.E.2d 664 (1983).

In the case sub judice, the objective of the language in the separation agreement regarding waiver of alimony with a specific exception was clearly to provide a certain amount of monetary support toward the payment of the Appellant's health insurance premiums, in lieu of a traditional alimony award, while also limiting the husband's obligation to a certain amount, as determined by the January 2003 premium. Thus, the separation agreement provided for the Appellant's waiver of a general alimony award, with the specific exception that the Appellee would pay health insurance premiums. By introducing evidence of inability to obtain health insurance, as well as the corresponding lack of any actual premium to be paid by the Appellee, the Appellant has met her burden of presenting a substantial change in circumstances, requiring alteration of the technical requirements of the separation agreement with regard to payment of premiums.

Faced with this changed circumstance, the Family Court developed a remedy which would enforce the Appellee's obligation to the Appellant regarding monetary assistance with the acquisition of necessary health care. While the obligation instituted in the Family Court's order is not in the same form originally contemplated by the parties, the ultimate result neither added to nor detracted from the fundamental obligation to which the Appellee agreed in the separation agreement. The Family court merely formulated an alternative method by which the Appellee's obligation, set forth in Paragraph Twelve of the separation agreement, could be satisfied. No increased monetary obligation resulted.

Based upon this Court's analysis of this matter, we find that the Circuit Court erred in finding that the Family Court lacked jurisdiction. On the contrary, we find that the Family Court order was correct in its resolution of the matters before it, and we remand this case to the Circuit Court of Wood County for entry of an order affirming the Family Court order.

Reversed and Remanded with Directions.