IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2022 Term

_____

No. 20-0343

_____

FILED
February 18, 2022
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

REX DONAHUE,
Defendant Below and Third-Party
Plaintiff Below, Petitioner

v.

MAMMOTH RESTORATION and CLEANING,
Plaintiff Below, Respondent

and

ALLSTATE INSURANCE COMPANY,
Third-Party Defendant Below,
Respondent

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Civil Action No. 19-C-289

AFFIRMED

_____

Submitted: January 11, 2022
Filed: February 18, 2022

Steven T. Cook, Esq.                    Evan R. Kime, Esq.
Cook Law Offices, PLLC                  Jackson Kelly PLLC
Barboursville, West Virginia            Charleston, West Virginia
Counsel for Petitioner                  Counsel for Respondent
                                        Allstate Insurance Company

CHIEF JUSTICE HUTCHISON delivered the Opinion of the Court.[1]

[1] Pursuant to an administrative order entered by this Court on February 7, 2022, the Honorable Alan D. Moats, Judge of the Nineteenth Judicial Circuit, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing February 7, 2022, following the resignation of former Justice Evan Jenkins; however, Justice Moats did not participate in this decision. And although former Justice Jenkins heard oral argument in this case, he did not participate in this decision.

**SYLLABUS BY THE COURT**

1.      "Where the issue of the enforceability of a settlement agreement requires the lower court to make findings of fact and apply contractual or other legal principles, this Court will review its order and the ultimate disposition under an abuse of discretion standard, its underlying factual findings under a clearly erroneous standard, and questions of law pursuant to a de novo review." Syl. Pt. 2, *Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 245 W. Va. 63, 857 S.E.2d 403 (2021).

2.      "A trial court is vested with a sound discretion in granting or refusing leave to amend pleadings in civil actions. Leave to amend should be freely given when justice so requires, but the action of a trial court in refusing to grant leave to amend a pleading will not be regarded as reversible error in the absence of a showing of an abuse of the trial court's discretion in ruling upon a motion for leave to amend." Syl. Pt. 6, *Perdue v. S.J. Groves & Sons Co.*, 152 W. Va. 222, 161 S.E.2d 250 (1968).

3.      "'A meeting of the minds of the parties is a *sine qua non* of all contracts.' Syl. pt. 1, *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859 (1932)." Syl. Pt. 1, *Burdette v. Burdette Realty Improvement, Inc.*, 214 W.Va. 448, 590 S.E.2d 641 (2003).

4.      "'The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W.Va.R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be

i

granted under Rule 15 when: (1) the amendment permits the presentation of the merits of the action; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.' Syllabus Point 3, *Rosier v. Garron, Inc.,* 156 W.Va. 861, 199 S.E.2d 50 (1973)." Syl. Pt. 5, *State ex rel. Vedder v. Zakaib*, 217 W. Va. 528, 618 S.E.2d 537 (2005).

**HUTCHISON, Chief Justice**:

Petitioner Rex Donahue appeals an order from the Circuit Court of Cabell County enforcing a settlement agreement between petitioner and his insurer, Respondent Allstate Company ("Allstate"), relating to water damage occurring at certain real property owned by petitioner. The order also denied petitioner's motion to amend his complaint or, alternatively, allow the filing of a new complaint so as to allege claims of breach of contract and insurance bad faith against Allstate. Petitioner contends that while he agreed to dismiss his claim against Allstate regarding the payment of a debt petitioner owed for water mitigation services performed as a result of the water damage, there was no meeting of the minds regarding petitioner's agreement to dismiss any claims against Allstate for denying coverage for the damage sustained and insurance bad faith.

Upon review of the parties' briefs, appendix record, oral argument, and applicable legal authority, and for the reasons stated below, we affirm the circuit court's order enforcing the settlement agreement between petitioner and Allstate and denying petitioner's request to amend his complaint or allow the filing of a new complaint.

## I. Factual and Procedural Background

In January of 2018, petitioner made a claim with Allstate on a Landlord's Package Policy for damages to rental property he owned in Ona, West Virginia, after several water pipes froze and then burst. Allstate denied the claim on the ground that the policy included an exclusion for property damage caused by a failure to maintain adequate

1

heat in the residence.[2] On July 24, 2018, Mammoth Restoration and Cleaning ("Mammoth") filed a civil complaint against petitioner in the Magistrate Court of Cabell County seeking $6,301.11 in payment for water mitigation services it performed at the subject property due to the burst pipes.

Petitioner thereafter filed a Third-Party Complaint against Allstate alleging that the subject property was insured by Allstate; that it was Allstate that selected Mammoth to perform the water mitigation services; that Allstate had denied coverage on the ground that "the electric was off"; that petitioner "has non-party witnesses to verify the electric was on"; and that Allstate "has a good faith basis to cover the cost" of Mammoth's services. Petitioner requested that Allstate be held responsible for the payment of Mammoth's services[3] and for his attorney fees and costs.

On June 18, 2019, Allstate removed the case from magistrate court to the circuit court[4] and filed its answer denying the principal allegations of the Third-Party Complaint.

---

[2] Allstate represents, and petitioner does not dispute, that the subject property was unoccupied at the time the water pipes burst.

[3] At the hearing on Allstate's motion to enforce the settlement, counsel for petitioner stated that when Mammoth arrived at the subject property to perform the water mitigation services, petitioner's son was on site and "signed a document . . . that said if Allstate doesn't pay [for Mammoth's services], that [petitioner was] liable under the contract."

[4] West Virginia Code § 50-4-8 (2018) provides, in pertinent part, that "[a]t any time before trial in a civil action involving $5,000 or more, any party may, upon payment of the

Continued . . .

2

On June 28, 2019, following negotiations between counsel for petitioner, Mammoth, and Allstate, counsel for Allstate circulated the following e-mail, the stated purpose of which was to memorialize the terms of a three-way agreement concerning petitioner's and Mammoth's respective claims:

> We have a three[-]way agreement to settle all disputes and claims between Plaintiff Mammoth, Defendant/Third-Party Plaintiff Rex Donahue, and Third-Party Defendant Allstate Insurance Company.
>
> The terms are as we discussed in recent emails:
>
> 1. Rex Donahue will release *all claims* against Allstate arising out of the subject water loss claim made in January 2018 on the Landlord's Package policy with Allstate covering 105 Iroquois Trail, Ona, WV 25545. Rex Donahue will dismiss *all claims* against Allstate in the civil action between the parties now pending in the Circuit Court of Cabell County.
>
> 2. In return, Allstate will satisfy the claim of Plaintiff Mammoth Construction Company[5] against Rex Donahue, by paying Mammoth Construction the sum of $5,000.00.
>
> 3. This will resolve all claims of the parties to the civil litigation referenced above. A jointly endorsed order of dismissal with prejudice of all claims will be submitted to the Court.
>
> Please confirm.

(Footnote and emphasis added).

---

circuit court filing fee, cause such action to be removed to the circuit court. . . . The matter shall then be heard by the circuit court."

[5] It is unclear why Mammoth is identified as "Mammoth Construction Company" rather than "Mammoth Restoration and Cleaning" as the distinction is not acknowledged by either party.

3

In e-mails responding to Allstate's June 28, 2019, e-mail setting forth the settlement terms, counsel for Mammoth replied, "Confirm." More importantly, counsel for petitioner replied, "Confirmed. Please circulate the Order and I will get my client[']s signature on the same (Rex Donahue)."[6] Although the June 28, 2019, e-mail from counsel for Allstate referenced "the terms . . . as we discussed in recent emails[,]" the appendix record includes only one such e-mail, which is dated June 27, 2019, from counsel for petitioner to counsel for Allstate. That e-mail states:

> I spoke with Rex Donahue about All-[S]tate paying the [Mammoth] Restoration claim (and/or whatever reduced settlement amount) and Rex Donahue would release All-State from the 3rd party complaint and bad faith claim surrounding this lawsuit and he AGREED TO THE SAME. I would request the release or other document as soon as possible so that I can get Rex Donahue to sign so we can resolve this case. It is my understanding Rex Don[a]hue will [b]e paying $0.00 to [Mammoth] under the existing suit and will be dismissed in light of All-State's payment of the same.

Also on June 27, 2019, counsel for petitioner left counsel for Allstate the following voicemail message that was transcribed and included in the appendix record:

> This is attorney Steve Cook. I spoke with Rex Donahue and he agreed with that [sic] to get Mon Mouth [Mammoth] out of that if you, if Allstate's paying the claim and will dismiss and drop *any suit against Allstate involving that claim on the home and the lost property.* If you can get that out or get that worked out

---

[6] Though it appears that counsel for petitioner e-mailed his response confirming the settlement terms only to counsel for Mammoth, it is reasonably presumed that counsel for petitioner did so inadvertently, as petitioner does not allege otherwise. Indeed, because counsel for Allstate was tasked with drafting the order and settlement agreements, it is clear that when counsel for petitioner replied and directed that the "order" be circulated so that he could "get [his] client's signature on the same," he intended to include counsel for Allstate.

4

we're a 100% in on Rex will pay zero, Allstate will pay it we'll drop our Third-Party claim and any bad faith. If you want to get that over to us, I will get Rex to sign it and we can go from there.

(Emphasis added).

A month later, in a July 25, 2019, e-mail to counsel for petitioner and counsel for Mammoth, counsel for Allstate advised as follows:

I have the check and will mail it today or tomorrow to [counsel for Mammoth] with a release to be executed by Mammoth that releases [petitioner] from Mammoth's claims.

I will also send Mr. Cook [counsel for petitioner] a release that releases Allstate from [petitioner's] claims, the consideration for which will be the payment of the debt owed to Mammoth. So, two releases. Does that work for everyone?[7]

(Footnote added).

Counsel for Allstate then forwarded two settlement agreements on that same date. Pursuant to one agreement, Mammoth would agree to release all claims against petitioner. Pursuant to the other agreement, petitioner would agree to release all claims against Allstate.[8] The e-mail from counsel for Allstate accompanying the agreements

---

[7] While the record includes an affirmative e-mail response from counsel for Mammoth, it does not include an e-mail response from counsel for petitioner.

[8] A copy of the written settlement agreement between Allstate and petitioner has not been made a part of the appendix record. However, we note that the parties do not dispute that it reflects the terms and conditions set forth by counsel for Allstate in the June 28, 2019, e-mail he sent to counsel for petitioner and counsel for Mammoth and which is previously set forth in this opinion.

advised, "Let me know if you have changes, otherwise, please execute and return the original to the appropriate Defendant's counsel."

On July 26, 2019, Allstate provided the agreed-upon settlement amount of $5,000 to Mammoth in resolution of all issues and claims arising out of its complaint seeking payment for mitigation services rendered to petitioner. On August 20, 2019, Mammoth returned the executed settlement agreement to both counsel for Allstate and counsel for petitioner. The terms of this settlement agreement are not at issue in this appeal.

Petitioner, however, failed to execute and return the other settlement agreement. In response to an inquiry from counsel for Allstate on September 25, 2019, as to when the agreement would be executed by petitioner, counsel for petitioner responded on that same date that he had hand delivered the settlement agreement to his client "a while ago" and "requested the same back from him with appropriate signatures." Counsel for petitioner related further that he "ha[d] requested an office visit with him asap regarding the same." Counsel explained that petitioner was "addressing a very complicated Federal case at the moment" but that he (petitioner's counsel) had "indicated the importance of this matter as well."

After subsequent inquiries concerning execution of the settlement agreement went unacknowledged,[9] Allstate filed a Motion to Enforce Settlement on November 22,

_____

[9] Subsequent e-mail inquiries to counsel for petitioner were sent on October 4th, October 21st, and October 28th, all of which went unanswered.

6

2019.[10] Petitioner responded, arguing that although he agreed to settle Mammoth's complaint seeking approximately $6,000 in costs associated with the water mitigation services it performed on the subject property, he did not agree to release any claim against Allstate for water damage on the property, which petitioner alleged amounted to $54,000. In its reply, Allstate argued that petitioner's response to the motion to enforce the settlement agreement represented a "sudden reversal from his prior unequivocal agreement to settle all claims" and was an "attempt[], for the first time, to invalidate or re-negotiate the unambiguous terms of the settlement agreement reached in this matter." According to Allstate, the parties reached a meeting of the minds regarding settlement, as clearly demonstrated by the written communications between counsel as well as the contemporaneous voicemail left by counsel for petitioner for counsel for Allstate. Allstate argued that there was no misunderstanding concerning the settlement terms and that the written agreement should be enforced.

On December 27, 2019, petitioner filed a motion to amend the complaint or, in the alternative, allow the filing of a new complaint. In his proposed pleading, petitioner alleged that the water leak at the subject property caused $54,000 in damage (in addition to the $6,000 in mitigation services performed by Mammoth); that Allstate breached its

---

[10] On December 2, 2019, counsel for petitioner filed a Motion to Withdraw as counsel of record because "[t]here has been a total break-down in communication between counsel and client in this matter. Client has agreed to withdraw of attorney [sic] and will seek new counsel." Ultimately, however, counsel for petitioner did not withdraw and represents petitioner in this appeal.

insurance contract with petitioner by failing to pay for repairs to the water damage and for the debt owed to Mammoth for mitigation services; and that Allstate's conduct constitutes "bad faith." Petitioner sought $54,000 in damage and repair costs, $6,000 for services performed by Mammoth, attorney fees and costs, and punitive damages.

By order entered on February 25, 2020, the circuit court granted Allstate's motion to enforce the settlement and denied petitioner's motion to amend the complaint or, alternatively, allow a new complaint. The circuit court determined that counsel for petitioner "had clear authority to bind his client to the terms of the settlement[,]"[11] was competent to enter into the agreement with counsel for Allstate, and "unequivocally gave his consent, on behalf of his client, to the terms of the agreement proposed by Allstate on June 28, 2019." The circuit court further determined that Allstate's payment of petitioner's debt "owed to Mammoth was valuable consideration for the return promise to 'release all claims against Allstate arising out of the subject water loss claim made in January 2018 on the Landlord's Package policy with Allstate covering'" the subject property and to "'dismiss all claims against Allstate in the civil action between the parties now pending in the Circuit Court of Cabell County.'" The court concluded that the June 28, 2019, e-mail outlined a valid and enforceable settlement agreement between Allstate and petitioner and

---

[11] We observe that petitioner does not contend that his counsel lacked the authority to bind petitioner to a settlement in this matter. *See* Syl. Pt. 1, *Miranosky v. Parson*, 152 W. Va. 241, 161 S.E.2d 665 (1968) ("When an attorney appears in court representing clients there is a strong presumption of his authority to represent such clients, and the burden is upon the party denying the authority to clearly show the want of authority.").

8

ordered petitioner to immediately abide by the agreement. Having granted Allstate's

motion to enforce the settlement, the circuit court denied petitioner's motion to amend the

complaint or, alternatively, to allow a new complaint, on the ground that such motion

would be futile and moot. It is from this order that petitioner now appeals.

## II. Standard of Review

In reviewing the circuit court's order granting Allstate's motion to enforce

the settlement, we apply the following standard:

> Where the issue of the enforceability of a settlement
> agreement requires the lower court to make findings of fact and
> apply contractual or other legal principles, this Court will
> review its order and the ultimate disposition under an abuse of
> discretion standard, its underlying factual findings under a
> clearly erroneous standard, and questions of law pursuant to a
> de novo review.

Syl. Pt. 2, *Triple 7 Commodities, Inc. v. High Country Mining, Inc.*, 245 W. Va. 63, 857

S.E.2d 403 (2021).

As for the circuit court's ruling denying petitioner's motion to amend his

third-party complaint or, alternatively, to file a new complaint, we afford circuit courts

wide discretion in ruling upon such motions:

> A trial court is vested with a sound discretion in granting
> or refusing leave to amend pleadings in civil actions. Leave to
> amend should be freely given when justice so requires, but the
> action of a trial court in refusing to grant leave to amend a
> pleading will not be regarded as reversible error in the absence
> of a showing of an abuse of the trial court's discretion in ruling
> upon a motion for leave to amend.

Syl. Pt. 6, *Perdue v. S.J. Groves & Sons Co.*, 152 W. Va. 222, 161 S.E.2d 250 (1968). With these standards in mind, we now consider the parties' arguments.

### III. Discussion

Petitioner argues that the circuit court erred by enforcing the settlement agreement because the evidence failed to establish a meeting of the minds as to petitioner's assent to release Allstate from all claims "arising out of the subject water loss claim" on the subject property that petitioner made with Allstate in January of 2018. He states simply that because "this case was filed in Magistrate Court with a limit of $10,000.00. . . . there could be no agreement on an amended complaint involving $54,000.00[;]" that "the settlement agreement had not been reduced to writing prior to any alleged 'agreement of the parties[;]'" and that the proposed agreement "included different language th[a]n agreed by the parties." In a summary response, Allstate counters that the circuit court correctly concluded that the record evidence demonstrated that there was a meeting of the minds. We agree with Allstate.

Our law concerning the enforcement of settlement agreements is well established. As a guiding principle, we have explained that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than litigation[.]" Syl. Pt. 1, in part, *Sanders v. Roselawn Mem'l Gardens, Inc.*, 152 W.Va. 91, 159 S.E.2d 784 (1968). Nonetheless, settlement agreements are contracts and therefore, "are to be construed 'as any other contract.'" *Burdette v. Burdette Realty Improvement, Inc.*, 214 W.Va. 448, 452, 590 S.E.2d 641, 645 (2003)

10

(quoting *Floyd v. Watson*, 163 W.Va. 65, 68, 254 S.E.2d 687, 690 (1979)). In that regard, "[i]t is well-understood that '[s]ince a compromise and settlement is contractual in nature, a definite meeting of the minds of the parties is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions of the parties.' 15A C.J.S. *Compromise & Settlement* § 7(1) (1967)." *O'Connor v. GCC Beverages, Inc.*, 182 W.Va. 689, 691, 391 S.E.2d 379, 381 (1990). A "'meeting of the minds' or 'mutual assent' relates to the parties having the same understanding of the terms of the agreement reached." *Messer v. Huntington Anesthesia Grp., Inc.*, 222 W. Va. 410, 418, 664 S.E.2d 751, 759 (2008) (citing 17 C.J.S. *Contracts* § 35 (1999)). "A meeting of the minds of the parties is a sine qua non of all contracts." Syl.P. 1, *Martin v. Ewing*, 112 W.Va. 332, 164 S.E. 859 (1932).

The evidence presented in support of Allstate's motion to enforce the settlement is not specifically addressed by petitioner and, thus, is not disputed. On June 27, 2019, counsel for petitioner sent an e-mail to counsel for Allstate and advised that he had spoken with his client "about All-[S]tate paying the [Mammoth] Restoration claim (and/or whatever reduced settlement amount) and [petitioner] would release All-State from *the 3rd party complaint and bad faith claim surrounding this lawsuit* and he AGREED TO THE SAME." (Emphasis added). Similarly, in a voicemail message left for counsel for Allstate on that same day, counsel for petitioner clearly related that he had spoken with petitioner

> and he *agreed* with that [sic] to get Mon Mouth [Mammoth]
> out of that if you, if Allstate's paying the claim and will dismiss
> and drop any suit against Allstate involving that claim *on the
> home and the lost property.* If you can get that out or get that

worked out we're a 100% in on [petitioner] will pay zero, Allstate will pay it we'll drop *our Third-Party claim and any bad faith.* If you want to get that over to us, I will get [petitioner] to sign it and we can go from there.

(Emphasis added).

Counsel for petitioner's own words firmly established that, in consideration for Allstate paying the debt petitioner owed to Mammoth for the mitigation services performed on the subject property, petitioner would release Allstate not only from the third-party complaint involving the debt to Mammoth, *but also "any suit against Allstate involving that claim on the home and the lost property," including "any bad faith."* Inarguably, petitioner's claim "on the home and the lost property" relates not to the debt owed for Mammoth's services, but to the claim petitioner made with Allstate in January of 2018 on the Landlord's Package policy for the water damage occurring on the subject property.

Further, the following day, on June 28, 2019, counsel for Allstate set forth in an e-mail to both counsel for petitioner and Mammoth indicating that the parties had agreed that petitioner "will release all claims against Allstate arising out of the subject water loss claim made in January 2018 on the Landlord's Package policy with Allstate covering" the subject property and "will dismiss all claims against Allstate in the civil action between the parties now pending in the Circuit Court of Cabell County. In return, Allstate will satisfy the claim of [Mammoth] against [petitioner], by paying [Mammoth] the sum of $5,000.00." In response to this e-mail, counsel for petitioner unequivocally

12

agreed to the terms and conditions of the settlement as stated therein by responding, "Confirmed" and requesting that counsel for Allstate "circulate the Order and I will get my client[']s signature on the same[.]" Subsequently, on July 25, 2019, counsel for Allstate circulated the settlement agreement, and counsel for petitioner never objected to its terms and conditions or otherwise suggested that they did not reflect that which the parties had negotiated and agreed to. When counsel for Allstate inquired about the delay in executing and returning the written agreement, counsel for petitioner confirmed, in a September 25, 2019, e-mail that he had hand delivered the agreement to petitioner "a while ago" and requested that petitioner return it to him "with appropriate signatures." Counsel for petitioner also advised that he requested a meeting with his client "asap regarding the same." Importantly, at no time did counsel for petitioner suggest that the reason for the delay in executing the agreement was because petitioner believed that it did not reflect the terms and conditions to which he had assented.

We conclude that that the record evidence was overwhelming that petitioner agreed that, in consideration for Allstate's payment to Mammoth for the performance of water mitigation services on the subject property, petitioner would dismiss his third-party complaint against Allstate and "will dismiss and drop any suit against Allstate involving that claim on the home and the lost property. . . . and any bad faith." Petitioner's assent to these terms was unequivocal, *see O'Connor*, 182 W. Va. at 691, 391 S.E.2d at 381, and the evidence clearly demonstrates that the parties had "the same understanding of the terms of the agreement reached." *Messer*, 222 W. Va. at 418, 664 S.E.2d at 759. We, therefore,

13

conclude that the circuit court did not abuse its discretion in determining that there was a meeting of the minds regarding the terms of the settlement agreement between petitioner and Allstate and that the settlement agreement must be enforced.[12]

Finally, petitioner also assigns as error the circuit court's denial of his motion to amend his third-party complaint against Allstate or file a new complaint. Petitioner claims he should be permitted to allege claims for breach of contract and insurance bad faith related to the water damage that occurred on the subject property as a result of the busted pipes. The circuit court determined that because it held that petitioner "must honor the terms of his settlement agreement, release his claims, and dismiss his case," his motion to amend or file a new complaint is both futile and moot. We agree.

---

[12] Petitioner raises two additional assignments of error relating to the enforceability of the settlement agreement: (1) that the agreement is unconscionable, and (2) that the agreement would unjustly enrich "the bad faith party" (i.e., Allstate). In the exercise of our discretion, we decline to consider these assignments of error, which consist of only a few sentences each and lack the citation to any supporting legal authority. "Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal." *State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996); *accord* W. Va. R. App. P. 10(c)(7). We have cautioned that "[a]n appellant must carry the burden of showing the error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syl. Pt. 2, *W. Va. Dep't of Health and Human Res. Emp. Fed. Credit Union v. Tennant*, 215 W. Va. 387, 599 S.E.2d 810 (2004) (quoting Syl. Pt. 5, *Morgan v. Price*, 151 W. Va. 158, 150 S.E.2d 897 (1966)). Because petitioner has failed to adequately brief these assignments of error, and, therefore, to even minimally carry the burden of showing error in the judgment about which he now complains, we decline to address them.

14

West Virginia Rule of Civil Procedure 15(a) (1998) permits a party to amend pleadings "only by leave of court or by written consent of the adverse party" after a responsive pleading is filed, and counsels that "leave [to amend] shall be freely given when justice so requires." *Id.* This rule has been interpreted broadly and permissively:

> The purpose of the words "and leave [to amend] shall be freely given when justice so requires" in Rule 15(a) W.Va. R.Civ.P., is to secure an adjudication on the merits of the controversy as would be secured under identical factual situations in the absence of procedural impediments; therefore, motions to amend should always be granted under Rule 15 when: (1) *the amendment permits the presentation of the merits of the action*; (2) the adverse party is not prejudiced by the sudden assertion of the subject of the amendment; and (3) the adverse party can be given ample opportunity to meet the issue.

Syl. Pt. 2, *State ex rel. Vedder v. Zakaib*, 217 W. Va. 528, 618 S.E.2d 537 (2005) (quoting Syl. Pt. 3, *Rosier v. Garron, Inc.*, 156 W. Va. 861, 199 S.E.2d 50 (1973)) (emphasis added). We have further explained that "a court may exercise its discretion to deny a motion for leave to amend a complaint where such amendment would *not* lead to a presentation of the case on its merits. . . . '"[T]he liberal amendment rules under Rule 15(a) do not require the courts to indulge in futile gestures."'" *Cal. Tchrs' Ret. Sys. v. Blankenship*, 240 W. Va. 623, 631-32, 814 SE.2d 549, 557-58 (2018) (quoting *Pyles v. Mason Cnty Fair, Inc.*, 239 W. Va. 882, 889, 806 S.E.2d 806, 813 (2017) (internal citation omitted)); *see also Johnson v. Pinson*, 244 W. Va. 405, 415, 854 S.E.2d 225, 235 (2020) (finding that proposed amendment to complaint is futile if it "could not withstand a motion to dismiss"); *Pyles*, 239 W. Va. at 889, 806 S.E.2d at 813 (concluding that circuit court did not abuse its discretion in refusing plaintiff's motion to add county commission as a defendant because

to do so would be a futile gesture given that commission would be immune from liability under either West Virginia Governmental Tort Claims and Insurance Reform Act or public duty doctrine); *Lloyd's, Inc. v. Lloyd*, 225 W. Va. 377, 386-87, 693 S.E.2d 451, 460-61 (2010) (concluding that motion to amend complaint was correctly denied "because the claims sought to be asserted against [one in privity with a party to prior litigation] would not have 'permit[ted] the presentation of the merits of the action because such claims also would have been barred by *res judicata*'").

We find that the circuit court correctly refused to grant petitioner permission to file the proposed amended or new complaint against Allstate insofar as we have already concluded that the court properly found that the settlement agreement between Allstate and petitioner resolved the very same claims.

### IV. Conclusion

Based upon all of the foregoing, the circuit court's order granting Allstate's motion to enforcement settlement and denying petitioner's motion to amend his third-party complaint or allow the filing of a new complaint is affirmed.

Affirmed.